BOARD OF DIRECTORS OF KENNELLY SQUARE CONDOMINIUM ASSOCIATION, Plaintiff, v. MOB VENTURES, L.L.C., *et al.*, Defendants-Appellees (Steve Benton *et al.*, Intervenors-Appellants as a Matter of Right).

First District (2nd Division)    No. 1—04—3274

Opinion filed September 6, 2005.

Kenneth M. Sullivan and Daniel G. Austin, both of Kenneth M. Sullivan & Associates, L.L.C., of Chicago, for appellants.

Keith A. Chadwick and Gregory A. McCormick, both of Garfield & Merel, Ltd., of Chicago, for appellee MOB Ventures, L.L.C.

Douglas M. Chalmers, of Douglas M. Chalmers, P.C., of Chicago, for appellee Equinox Lincoln Park, Inc.

JUSTICE WOLFSON delivered the opinion of the court:

Several unit owners in a condominium filed an action for trespass against a commercial property owner who allegedly placed an air-conditioning system on the common-area rooftop adjacent to their units. The issue is whether the unit owners have standing to bring their claim where the condominium association has filed a complaint on behalf of all the unit owners. We find they do not.

FACTS

Kennelly Square Condominium is located at 1749 North Wells

Street in Chicago. The property consists of two interconnected buildings—a 22-story high-rise building (the "high-rise"), which sits on top of a 3-story parking garage, and a 10-story warehouse building (the "warehouse"). The first four floors of the warehouse building are commercial space, and the top six floors are residential space. The "Commercial Property" consists of the first four floors of the warehouse building. The "Condominium Property" consists of the high-rise, the garage, and the top six floors of the warehouse building.

The Condominium Property is owned by Kennelly Square Condominium Association and governed by elected members of the board of directors of the Association (Board). The Commercial Property is owned and operated by defendant MOB Ventures, L.L.C. (MOB). Defendants Equinox Lincoln Park, Inc. (Equinox), and DBW, L.L.C., d/b/a Sauce (Sauce), are commercial tenants of MOB at the Commercial Property.

A recorded "Declaration of Easements, Restrictions, and Convenants" (Declaration) exists between the owner of the Commercial Property and the Association. The Declaration states that it applies to the Condominium Property, but not to the Commercial Property. Article 4.07 of the Declaration contains an easement applying to an air-conditioning compressor unit, exhaust air housings, and skylights located on the roof of the warehouse building. The owner of the Commercial Property is responsible for the maintenance, repair, and replacement at its sole cost and expense of the compressor, housings, and skylights. Article 18.01 of the Declaration provides:

> "No Unit Owner nor group of Unit Owners shall have the right to take any action under this Declaration or to enforce any of the rights, easements or privileges granted by this Declaration for the benefit of the Condominium Property or the Owner of the Condominium Property. Any such action and enforcement shall be taken solely by the board of directors of the Association on behalf of all Unit Owners."

The Board filed a complaint against MOB and Equinox. The Board alleged the Association and MOB entered into a waiver agreement in which the Association agreed to waive restrictions against the occupation of a health club in the Commercial Property and waive its access easement to the Commercial Property. Subsequent to the Agreement, Equinox began operating a health club in part of the commercial property. MOB and/or Equinox then installed "two large chiller units *** on the rooftop of the Warehouse Building."

The Board's complaint alleged the unit owners who occupied space above the warehouse building were subjected to "continual loud noise emanating from the chiller units." In addition, unit owners had been

subjected to constant noise from the operation of the club, including loud music, vibrations from equipment, and other noises and vibrations from Equinox's space. In count I, the Board sought to rescind the waiver agreement between MOB and the Association. Count II alleged fraud against MOB. Counts III and IV asked for damages and injunctive relief for the noise and vibrations, which constituted a nuisance to the unit owners.

The plaintiffs-intervenors (intervenors) are the owners of four units in the condominium. Subsequent to the Board's complaint, they filed their verified complaint in intervention for injunction and other relief. The complaint contained three counts—for nuisance, trespass, and fraud in the inducement. They alleged MOB installed a new cooling system for the Commercial Property on the rooftop of the three-story garage, adjacent to the high-rise. They alleged the new system created noise and sightline disturbances, interfering with their enjoyment of their property. They said the placement of the system was "contrary to MOB's representations to the Condo owners and in direct violation of the Warehouse rooftop easement."

MOB and Equinox moved to dismiss the intervenors' complaint, pursuant to section 2—619 of the Code of Civil Procedure for counts I and II, and pursuant to section 2—615 for count III. 735 ILCS 5/2—615, 2—619 (West 2002). The trial court dismissed all three counts of the complaint against Equinox. As to the claims against MOB, the court denied the motion to dismiss count I for nuisance. Count II for trespass was dismissed with prejudice because the intervenors lacked standing based on article 18.01 of the Declaration limiting enforcement rights to the Board. Count III for fraud in the inducement was dismissed without prejudice based on the intervenors' failure to allege they took any action in reliance on MOB's representations.

The intervenors filed a motion to reconsider the court's dismissal of their trespass claim, which the court denied. They appeal the denial of the motion to reconsider, as well as the part of the underlying order dismissing count II for trespass.[1]

DECISION

When deciding a section 2—619 motion to dismiss, the court takes all well-pleaded facts in the complaint as true. *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1039, 821 N.E.2d 340 (2004). A section 2—619 motion presents a question of law, and our review is *de novo*. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 411, 775 N.E.2d 951 (2002).

---

[1]The appellants do not appeal the dismissal of count III or the dismissal of the counts against defendant Equinox.

The issue is whether the individual unit owners have standing to sue a third party for trespass to a common area, where the Board has filed a complaint on behalf of all unit owners. MOB contends the individuals do not have standing because the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2002)), as well as the Declaration, grants the Board *exclusive* standing to bring the claim.

This court has addressed standing in a similar context in *Tassan v. United Development Co.*, 88 Ill. App. 3d 581, 410 N.E.2d 902 (1980), and *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 817 N.E.2d 1054 (2004).

In *Tassan*, seven individual owners of condominium units sued the development company for breach of an implied warranty of habitability for refusing to repair defects in common elements of the condominium. *Tassan*, 88 Ill. App. 3d at 584. The developer, United, contended the plaintiffs lacked standing because they were attempting to assert the rights of the association rather than their own individual rights. *Tassan*, 88 Ill. App. 3d at 595. United relied on section 9.1 of the Condominium Property Act, which states:

> "The board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2002).

The court held the owners were not asserting the rights of the association. Rather, they were asserting their individual rights as owners of the common elements. The court said:

> "These rights of ownership arose as a result of the individual contracts for sale between United and each individual buyer. There is no contract between the association and United creating an express warranty to repair defects in the common elements. There is no contract between United and the association out of which the implied warranty of habitability arose. In both cases, it is the contracts between United and the individual buyers that created these warranties." *Tassan*, 88 Ill. App. 3d at 596.

Because the owners were asserting their individual contract rights rather than the association's rights, the court found the plaintiffs had standing to pursue their claim. *Tassan*, 88 Ill. App. 3d at 596.

In *Poulet*, the trial court dismissed for lack of standing the claims of an individual unit owner against a condominium developer and seller for conversion and common law constructive fraud. *Poulet*, 353 Ill. App. 3d at 83. According to the claim, the unit owners paid money into a bank account held in the condominium association's name. The funds in the account were for maintenance and operating expenses of

the condominium units. The plaintiff alleged the defendants improperly directed that checks be delivered from the association's account for the defendants' benefit. *Poulet*, 353 Ill. App. 3d at 86.

The court held the plaintiff's claims did not involve individual contract rights, as in *Tassan*. Rather, the claims involved conversion and common law constructive fraud in connection with funds in the association's account. *Poulet*, 353 Ill. App. 3d at 92. The court noted the plaintiff, as a tenant in common with an undivided interest in the common areas, had some interest in the claims related to the association's funds. However, the association was charged with the primary responsibility to protect those interests. *Poulet*, 353 Ill. App. 3d at 99. Based on the provisions of the Act that give broad powers to the board of managers over the association's funds, the court held that causes of action for conversion and common law constructive fraud relating to the association's account belong exclusively to the association. *Poulet*, 353 Ill. App. 3d at 99.

The court found that allowing individual unit owners to assert claims relating to an association's funds would be impractical, detrimental to settlement negotiations between developers and an association, and leave responsibility and authority over the funds fragmented and uncertain. *Poulet*, 353 Ill. App. 3d at 99. The benefits of the court's finding included avoiding a multiplicity of lawsuits, producing economic savings incident to one trial, and expediting the resolution of controversies. *Poulet*, 353 Ill. App. 3d at 99. Moreover, the court said, individual owners would not be barred from obtaining relief in the event the association failed to take action against third parties. In that event, individual owners could protect their interest in the association's funds by bringing a derivative action against the association. *Poulet*, 353 Ill. App. 3d at 100.

The unit owners in this case are not basing their action on individual contract rights, as in *Tassan*, but on common law trespass. As such, the unit owners have no standing to bring their action where the Board has filed a claim on their behalf. We adhere to the public policy reasons we discussed in *Poulet* for finding a condominium association has exclusive standing to assert a claim against a third party. *Poulet*, 353 Ill. App. 3d at 99-100. The owners have the remedy of filing a derivative action against the Board if the Board fails to assert their claim against the defendants.

It is true, as the court stated in *Tassan*, that the unit owners own the common elements as tenants in common. In the absence of a claim brought by the board, this ownership would give the owners standing to sue for trespass to those common elements. However, section 9.1 of the Condominium Property Act grants the board of managers of an

association standing to represent the unit owners in matters involving the common elements. 765 ILCS 605/9.1(b) (West 2002). Where, as here, the Board has filed a claim on behalf of the owners, to allow " '[p]iecemeal litigation' " by the unit owners would " 'frustrate the statutory scheme,' " whereby " 'the association acts as the representative of all owners in common.' " *Poulet*, 353 Ill. App. 3d at 98, quoting *Cigal v. Leader Development Corp.*, 408 Mass. 212, 217-18, 557 N.E.2d 1119, 1122-23 (1990).

The intervenors' reliance on *Carney v. Donley*, 261 Ill. App. 3d 1002, 633 N.E.2d 1015 (1994), is not persuasive. In that case, a condominium unit owner sued other unit owners and the association where the association allowed some unit owners to extend their balconies over the common patio area. *Carney*, 261 Ill. App. 3d at 1004. The plaintiff's standing was not at issue. The only issue addressed by the court was whether the defendants should have been granted summary judgment. We look instead to *Tassan* and *Poulet*, which squarely address the issue in this case—an individual owner's standing to sue where more than one unit or a common area is affected. Under these circumstances, where no contract rights are involved, the Board has exclusive standing to sue for trespass to a common element of the property.

MOB contends article 18.01 of the Declaration supports a finding of no standing for the intervenors. Article 18.01 provides the Board has exclusive standing to take any action or enforce any rights under the Declaration. The intervenors contend article 18.01 does not apply because the air-conditioning system was installed on the garage rooftop. The garage rooftop, they say, is entirely separate from the warehouse rooftop to which the easement applies. No easement exists for the garage rooftop. Given our holding based on the Condominium Property Act and *Poulet*, we need not decide the Declaration issue because we find the Board has exclusive standing to assert the rights of the individual owners on a claim of trespass to a common area.

CONCLUSION

We affirm the judgment and rulings of the trial court.

Affirmed.

BURKE and HALL, JJ., concur.