THE RIVER PLAZA HOMEOWNER'S ASSOCIATION, Plaintiff-Appellant, v. LORI T. HEALEY, Commissioner, Department of Planning and Development, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—07—1281

Opinion filed March 16, 2009.—Rehearing denied April 17, 2009.

BryceDowney, LLC, of Chicago (Justin L. Weisberg and Emily K. Muceus, of counsel), for appellant.

Litchfield Cavo LLP, of Chicago (Carrie A. Durkin and Bradford A. LeHew, of counsel), for appellee 405 N. Wabash Parking Condominium.

Fox, Hefter, Swibel, Levin & Carroll, LLP, of Chicago (Roger B. Harris and Adam A. Hachikian, of counsel), for appellees RSL Building Corporation, 403 N. Wabash LLC, and Waterton River Plaza, LLC.

Mara S. Georges, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Christopher M. Grunewald, of counsel), for appellees Arnold L. Randall and City of Chicago.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

The board of directors of the River Plaza Homeowner's Association brought this suit to stop the proposed construction of an adjacent multifamily condominium building, which the board claimed would interfere with easements belonging to the homeowners. On February 16, 2007, the circuit court of Cook County dismissed this suit, on the ground that the board of directors lacked standing to bring this suit on behalf of the homeowners. For the reasons discussed below, we affirm, as modified.

## BACKGROUND

The plaintiff named in the complaint is the River Plaza Homeown-

er's Association (the Association), a homeowners' association of the owners of residential condominiums at 405 North Wabash in Chicago, Illinois. The condominium building at 405 North Wabash is part of a planned development that was approved by the Chicago city council in 1974. The planned development was for property located at both 403 and 405 North Wabash. The complaint was filed by the Association's board of directors (the board).

The defendants in this case include 403 N. Wabash LLC (403 N. Wabash), RSL Building Corporation (RSL) and Waterton River Plaza, LLC (Waterton). These three defendants (the developer defendants) planned to develop a new residential building, at 403 North Wabash Avenue, located west of the Association's condominium building.

Defendant 405 N. Wabash Parking Condominium (Wabash Parking) is the owner and operator of an underground parking garage, located beneath the Association's condominium building. Defendant Wabash Parking also owns the plaza at 403 North Wabash, where the developer defendants intend to build. In 2005, defendant Wabash Parking granted air rights and easements to defendant 403 N. Wabash, in order to construct the proposed building.

Defendant Lori T. Healey was sued in her capacity as the then-current commissioner of the Department of Planning and Development, for the City of Chicago. Former Commissioner Denise M. Casalino had issued a letter on October 19, 2005, approving the proposed building as conforming to the 1974 planned development. Claiming that the project was wrongfully approved, the board sued both the commissioner and the City of Chicago (the city defendants).

## Procedural History

The board filed its first complaint on February 7, 2006, and its second amended complaint on October 27, 2006. The trial court ordered defendants to answer or otherwise respond to the second amended complaint by November 27, 2006. On November 27, 2006, defendants 403 North Wabash and RSL moved to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)) on the ground that plaintiff had failed to state a cause of action, and pursuant to section 2—619 on the ground that the board lacked standing (735 ILCS 5/2—619 (West 2006)). Defendant Wabash Parking joined the motion filed by defendants 403 North Wabash and RSL; and it also moved to dismiss plaintiff's claim for injunctive relief on the ground that the complaint failed to allege an inadequate remedy

at law.[1] The city defendants moved to dismiss pursuant to section 2—615 for failure to state a cause of action. 735 ILCS 5/2—615 (West 2006). Defendants 403 North Wabash and RSL joined the motion of the city defendants. Defendant Waterton moved to dismiss pursuant to section 2—603(a) on the ground that the second amended complaint failed to contain a plain and concise statement of the cause of action against it. 735 ILCS 5/2—603(a) (West 2006).

On February 14, 2007,[2] the trial court heard argument on all the dismissal motions. In the end, the trial court dismissed the entire suit on the ground that the board lacked standing to bring it. However, before making this global ruling, the trial court made individual rulings on the other motions before it. First, the trial court denied the city defendants' section 2—615 motion to dismiss counts I, II and III, which were the only counts against them. 735 ILCS 5/2—615 (West 2006). Second, the trial court dismissed without prejudice counts IV, V, VI, VII and VIII for being insufficiently pled. (Counts IV and VI were against defendants RSL and 403 North Wabash; count V was against Wabash Parking alone; and count VII was against RSL, 403 North Wabash, and Wabash Parking.) Third, the trial court denied the motion to dismiss count IX. Last but not least, the trial court stated that it was dismissing the whole suit pursuant to section 2—619 based on lack of standing, and the trial court asked the city defendants if they wanted to join the motion, which, of course, they did. 735 ILCS 5/2—619 (West 2006).

The written order, dated February 16, 2007,[3] stated first that the city defendants' section 2—615 motion to dismiss counts I, II and III was denied (735 ILCS 5/2—619 (West 2006)); that counts IV through

---

[1]In its motion, defendant Wabash Parking did not state whether it was moving pursuant to section 2—615 or section 2—619. 735 ILCS 5/2—615, 2—619 (West 2006).

[2]The transcript of this proceeding states that it occurred on February 14, 2007; and the appellate brief of the city defendants also states that the proceeding occurred on February 14. However, the city defendants' notice of cross-appeal states that the trial court's oral ruling was issued on February 15, 2007; and plaintiff's index to its appendix states that the proceeding occurred on February 16, 2007. In our opinion, we use the date on the transcript.

[3]In this opinion, we will use the date of February 16, when referring to the written order. The file stamp on the order appears to state February 16, 2007; both plaintiff's table of contents to its appendix and its table of contents to the record state that the order was filed February 16, 2007; and the city defendants' notice of cross-appeal states the same. However, plaintiff's notice of appeal and the notice of cross-appeal by defendants RSL and 403 North Wabash state that the order was filed February 15, 2007.

VIII were dismissed without prejudice; and that the motion to dismiss count IX was denied. The order next stated that all the defendants joined in the section 2—619 motion, that this motion was granted, and that the entire suit was therefore dismissed with prejudice. 735 ILCS 5/2—619 (West 2006).

On March 15, 2007, plaintiff moved the trial court (1) to reconsider its February 16, 2007, order; and (2) to clarify whether the board would have standing in the future, if the board obtained consent to sue from two-thirds of the homeowners, as provided in the Association's bylaws. During the prior argument on February 14, the trial court had orally stated "once the members, the two-third votes, give you the authority to act then you do have standing." In their briefs in response to plaintiff's motion to reconsider, defendants did not argue that the Association would be barred from future suit, if it obtained two-thirds consent.

On May 10, 2007, the trial court heard argument on plaintiff's motion to reconsider and issued a written order denying it. At argument, the trial court orally explained its prior ruling:

"Now, you say, well, nobody has said that they [the homeowners] don't want [the suit]. They haven't come to the Board and say [sic], don't sue. Well, that may be true. And if that is the case, all the Board had to do is present the lawsuit to the people and let them vote on it. And then the Court and the bylaws, in my view, would be effectuated.

I don't see this as a big issue of depriving people of their right to make a suit because if it's something that they want to do, they can do it. They're not precluded. They just have to get two-thirds votes. ***

So my answer is this. My judgment regarding the procedural issue was pursuant to 2[—]619. It was a final judgment on the merits of the question of whether or not you have standing. That is an appealable issue because it defeats your purpose to bring this lawsuit in the manner that you have brought it and it states that in order— the Court's view is that in order to bring this lawsuit you need two-thirds vote of the condominium association. That is appealable. Because what you say is you don't. If the Appellate Court agrees with you then they will say that my ruling was wrong and you will be allowed to pursue—proceed with the merits of this case.

If they don't, that means that this case that is before me has to be refiled, or whatever you might want to do with it."

The trial court issued a written order, dated May 10, 2007, stating that "for the reasons stated on the record, Plaintiff's motion for reconsideration is denied."

Defendants did not contest the trial court's oral ruling on May 10,

2007, that the Association still had the right to bring suit if two-thirds of its members voted to do so. Defendants did not object orally in court when the trial court made its ruling; they did not challenge this ruling in a postjudgment motion to the trial court; and they did not raise it in their appellate briefs. At the argument on May 10, counsel for defendants RSL, 403 North Wabash and Waterton stated that he could not "improve on what [Y]our Honor has said."[4] In its appellate brief, defendants RSL, 403 North Wabash and Waterton stated that the Association had "standing to bring the suit, which it could act upon if it obtained two-thirds consent of the Unit Owners."

On May 15, 2007, plaintiff filed a notice of appeal. The notice stated that plaintiff "appeals the February 15, 2007 order," but the notice attached both the February 15 order and the May 10 order. On May 22, 2007, defendants RSL, 403 North Wabash and Waterton filed a notice of cross-appeal, appealing "that portion of the Circuit Court's order of February 15, 2007, denying their motion to dismiss Count IX of Plaintiff's Second Amended Complaint, pursuant to 735 ILCS 5/2—615." On June 7, 2007, the city defendants also filed a notice of cross-appeal, appealing "the portion of the oral ruling of the Circuit Court of Cook County issued on February 15, 2007 and that court's written order of February 16, 2007 denying their Motion to Dismiss Counts I through III of the Second Amended Complaint brought under 735 ILCS 5/2—615."

### Relevant Bylaws and Declarations

There are three documents that govern the board's powers: (1) the "River Plaza Declaration of Covenants, Conditions, Restrictions and Easements," dated August 11, 1994 (the Operating Declaration); (2) the "Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and Bylaws for the River Plaza Condominium Association," filed August 26, 1994 (the Condo Declaration); and (3) the bylaws, which are part of the Condo Declaration. All three documents have been quoted, in part, in the various arguments advanced by the parties.

The trial court's dismissal was based on the requirement in the bylaws that two-thirds of the homeowners must consent for the board to bring suit. The two-thirds rule is found in subparagraph (ad) of section 15.11 which states, in full:

"(ad) subsequent to the Initial Meeting of members, *except for* (i) litigation seeking to enforce any remedy available to the Association at law or in equity, including those provided for in the Declara-

---

[4]The attorneys for the city defendants and for Wabash Parking were present at the May 10 argument but they did not offer argument.

tion, in the case of a violation of any provision of the Declaration, these Bylaws or the rules and regulations of the Association, including by way of example and not limitation, failure by a Unit Owner to pay his proportionate share of Common Expenses or (ii) litigation in connection with real estate tax assessments on the Property, *the Board shall have no authority to commence any litigation, without the prior consent of not less than two-thirds (2/3) of all Unit Owners.*" (Emphasis added.)

In its motion to reconsider, the board quoted the second sentence of article 20 of the Operating Declaration. Article 20 was entitled "Condominium Association Acting for Unit Owners." The second sentence stated, in full:

"Any action to enforce or defend rights, obligations, Easements, burdens and benefits under this Declaration, or the right to settle and compromise any claims, on behalf of the Unit Owners who are members of a Condominium Association shall be taken on behalf of such Condominium Association and all such Unit Owners, solely by such Condominium Association by its duly authorized officers acting pursuant to authority granted by law, the applicable Condominium Declaration or resolution of the board of managers of such Condominium Association."

The fourth sentence provided, in full:

"No Unit Owner or group of Unit Owners shall have the right to take any action under this Declaration or to enforce any of the rights, Easements or privileges granted by this Declaration for the benefit of the Total Property or any part thereof."

The board's reconsideration motion also quoted article 12 of the Condo Declaration which provided, in relevant part:

"The provisions of this Declaration are subject to the provisions of the Operating Declaration. *** In the event of any inconsistency between the provisions of this Declaration and the provisions of the Operating Declaration, the provisions of the Operating Declaration shall prevail unless such inconsistency is required to conform this Declaration with any requirement of the Act, in which event the provisions of this Declaration and of the Act shall prevail, but only to the extent that such requirements of the Act may not be waived by Unit Owners."

Section 1.15 of the Condo Declaration defined the words "Operating Declaration," used in the above paragraph, to mean the River Plaza Declaration of Covenants, Conditions, Restrictions and Easements.

At the argument on May 10, 2007, concerning the board's reconsideration motion, the trial court ruled that the board had waived its argument with respect to article 20 by failing to raise it before, and that even if the trial court considered this argument, this provision

did not change the court's ruling, because the trial court did not see any inconsistency between article 20 of the Operating Declaration, which gave the board the exclusive authority to enforce easements, and article 15, which required the board to obtain two-thirds consent before filing suit.

## ANALYSIS

The trial court dismissed this suit pursuant to section 2—619 of the Code of Civil Procedure, on the ground that the board lacked standing to bring this suit on behalf of the Association. 735 ILCS 5/2—619(a)(2) (West 2006).

"A motion to dismiss, pursuant to section 2—619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). For a section 2—619 dismissal, our standard of review is *de novo. Solaia Technology*, 221 Ill. 2d at 579.

For a motion to be properly brought under section 2—619, the motion (1) must be filed "within the time for pleading," and (2) must concern one of nine listed grounds. 735 ILCS 5/2—619(a) (West 2006). First, the section 2—619 dismissal motion was timely filed, within the time for pleading to the board's second amended complaint. Although all defendants did not file a section 2—619 motion challenging standing, the trial court dismissed the suit on that basis with respect to all defendants. After the trial court ruled, it gave all defendants the opportunity to climb aboard the winning bandwagon by joining the motion which they, of course, did. Plaintiff did not claim, either in the court below or on appeal, that some of the defendants waived the standing issued by failing to raise it in a timely manner. Issues not raised are waived. *LaSalle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806, 826 (2008).

Second, defendants' section 2—619 motion concerned one of the nine listed grounds. A section 2—619 motion is permitted only on the following grounds:

"(1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.

(2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.

(3) That there is another action pending between the same parties for the same cause.

(4) That the cause of action is barred by a prior judgment.

(5) That the action was not commenced within the time limited by law.

(6) That the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

(8) That the claim asserted against defendant is unenforceable because of his or her minority or other disability.

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a) (West 2006).

In the case at bar, the subject matter of defendants' dismissal motion falls into one of these listed categories, namely: "That the plaintiff does not have legal capacity to sue." 735 ILCS 5/2—619(a) (West 2006). In the case at bar, the trial court dismissed the complaint due to the board's legal incapacity to bring this suit on behalf of the Association. Thus, defendants' dismissal motion concerned the second listed ground. This court has also held that lack of standing qualifies under the ninth listed ground: an "affirmative matter avoiding the legal effect of or defeating the claim." *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 89 (2004). Either way, section 2—619 applies.

Having determined that, procedurally, this motion was properly brought under section 2—619, we must next determine whether, substantively, it was properly granted. 735 ILCS 5/2—619(a) (West 2006). The trial court dismissed the suit because the bylaws required the board to obtain the consent of two-thirds of the homeowners before bringing suit and the board had failed to obtain the required consent. Section 15.11(ad) of the bylaws of the Association provides, in pertinent part, that: "except for (i) litigation seeking to enforce any remedy available to the Association *** in the case of a violation of any provision of the Declaration, these Bylaws or the rules and regulations of the Association *** or (ii) litigation in connection with real estate tax assessments on the Property, the Board shall have no authority to commence any litigation, without the prior consent of not less than two-thirds (2/3) of all Unit Owners."

The bylaws thus required the board to obtain two-thirds consent, with two exceptions; and neither exception applies in this case. The first exception covers violations of "the Declaration, these Bylaws" or the Association's rules and regulations. The second exception concerns "real estate tax assessments." Plaintiff claims that the first exception applies.

Plaintiff's interpretation of the first exception has the exception swallowing the whole. Plaintiff argues that the exception includes any lawsuit "seeking any remedy *** at law or in equity." What other suits are there? The words "at law or in equity" cover the whole

range of possible lawsuits. If plaintiff's interpretation was correct, then there would be no suit which the two-thirds rule could be applied to, and the two-thirds rule would become meaningless baggage—a waste of space. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 286 Ill. App. 3d 660, 667 (1997) (rejecting a party's proposed interpretation because it would render a phrase "meaningless").

When a court interprets a contract, "meaning and effect must be given to every term and provision, if possible, since it is presumed that every clause in the contract was inserted deliberately and for a purpose and that the language was not employed idly." *Village of Orland Hills v. Citizens Utilities Co. of Illinois*, 347 Ill. App. 3d 504, 516 (2004). Thus, plaintiff's interpretation, which robs the two-thirds rule of any meaning, cannot possibly be right.

Plaintiff argues that defendants' interpretation of the first exception is flawed. Defendants argue that the clause "in the case of a violation" is a limiting factor, limiting the exception to only those suits brought "in the case of a violation" of the Declaration, the bylaws, or other rules or regulations. Plaintiff claims that this phrase is given only by way of example of the types of suits that the exception covers.

Plaintiff's interpretation makes no sense when one looks at the entire exception. The exception does contain a clause which states "including by way of example and not limitation," with an example following it. However, the violation clause comes *before* this language, not *after* it. Presumably, if the authors of the contract intended to include the violation clause just "by way of example," they would have placed it after the words "by way of example."

Plaintiff also claims that the exception's first use of the word "including" introduces a list and that the violation clause was just one item in a nonexhaustive list. The exception stated, in part: "except for (i) litigation seeking to enforce any remedy *** at law or in equity, including those provided for in the Declaration, in the case of a violation." If plaintiff is correct, and the word "including" introduced a list, then the two items in this list were "those provided for in the declaration" and "in the case of a violation." If that were true, then the two items in the list should have been connected by the word "and." In essence, plaintiff wants to rewrite the section to read: "including those provided for in the Declaration [and] in the case of a violation." Unfortunately for plaintiff, the "including" clause ends, not with the word "and," but with a comma, to indicate that the clause is complete, with just one item, not two. *People v. Perry*, 224 Ill. 2d 312, 330 (2007) (discussing the meaning of the word "including"), citing Black's Law Dictionary 777-78 (8th ed. 2004) (example of a two-

item "including" clause that has the two items connected by the word "and"); *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583-84 (1993) (a nonexhaustive list began with "includes" and contained "and" before the last item).

Perhaps realizing that its interpretation does not hold water, plaintiff offers reasons why the two-thirds clause should be simply disregarded: (1) the two-thirds clause allegedly conflicts with the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2006)) and is thus void; and (2) the two-thirds clause allegedly conflicts with the Operating Declaration, which trumps the clause in case of a conflict.

There is no conflict with either the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2006)) or the Operating Declaration. Plaintiff points to section 9.1(b) of the Condominium Property Act, which states: "The board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2006). Plaintiff claims that this statutory section gave the board standing, and that the two-thirds rule is inconsistent with this statutory section and thus void. Section 2.1 of the Act states that: "Any provisions of a condominium instrument that contains provisions inconsistent with the provisions of this Act are void as against public policy and ineffective." 765 ILCS 605/2.1 (West 2006). The Act defines "condominium instruments" to include bylaws. 765 ILCS 605/2(*l*) (West 2006).

First, the two-thirds rule is not inconsistent with section 9.1(b). Recently, this court has described subsection (b) as follows: "This subsection empowers the association to act in the interest of its unit owners with respect to common elements, and it also empowers the board to direct the activities of the association in that regard, in a manner similar to the empowerment of a board of directors to act on behalf of a corporation." *Davis v. Dyson*, 387 Ill. App. 3d 676, 687 (2008). While this subsection gives the board the authority to act on behalf of the owners, there is nothing in this subsection that precludes the owners from conditioning the exercise of that authority on a two-thirds vote. *Uehara v. Schlade*, 236 Ill. App. 3d 252, 258 (1992) (bylaws limit the board's right to sue).

Second, this court is hesitant to read limits into section 9.1(b) which are not explicitly stated. Thus, for example, this court recently held that section 9.1(b) "does not purport to bar unit owners from also acting on behalf of the association against third parties" in a derivative suit. *Davis*, 387 Ill. App. 3d at 688; *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 100 (2004) (nothing barred unit owners from suing

in a derivative action, if the association failed to act). See also *Poulet*, 353 Ill. App. 3d at 92 (" '[S]ection 9.1 of the Act does not in any way deny an individual unit owner the right to assert an individual contract right' "), quoting *St. Francis Courts Condominium Ass'n v. Investors Real Estate*, 104 Ill. App. 3d 663, 667 (1982). Similarly, section 9.1(b) does not purport to bar unit owners from requiring the board to obtain two-thirds consent prior to exercising its authority to sue.

Third, section 9.1(b) of the Act (765 ILCS 605/9.1(b) (West 2006)) must be read in conjunction with section 18.4 of the Act, which sets forth the powers and duties of the board (765 ILCS 605/18.4 (West 2006)). "A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 60 (2006). Statutory sections must "not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute." *DeLuna*, 223 Ill. 2d at 60. Section 18.4(a) of the Act gives the board the authority to act with respect to the common elements of the condominium property, but expressly states that "[n]othing in this subsection (a) shall be deemed to invalidate any provision in a condominium instrument placing limits on expenditures for the common elements." 765 ILCS 605/18.4(a) (West 2006). If, as plaintiff argues, section 9.1(b) gives the board, with respect to the common elements, an authority to sue which cannot be conditioned or limited in any way, then section 9.1(b) conflicts with section 18.4(a)'s rule that the bylaws may place limits on the board's expenditures with respect to common elements.

Fourth, *Board of Directors of Kennelly Square Condominium Ass'n v. Mob Ventures, L.L.C.*, 359 Ill. App. 3d 991 (2005), cited by plaintiff, is inapposite. In *Kennelly*, the board sued a commercial tenant alleging nuisance; and four individual owners filed a complaint seeking to intervene in the board's suit. *Kennelly*, 359 Ill. App. 3d at 992-93. This court held that "the unit owners [had] no standing to bring their action where the Board [had] filed a claim on their behalf." *Kennelly*, 359 Ill. App. 3d at 995; see also *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 296 (1994) (board, rather than unit owners, had standing, even though "not all unit owners were affected").

The holding in *Kennelly* has no bearing on our case. The issue in *Kennelly* was whether the unit owners had standing . *Kennelly*, 359 Ill. App. 3d at 994. There was no issue about whether the board had obeyed the dictates of its own bylaws in bringing its suit, which is the issue in our case. No one in the case at bar has claimed that the individual owners should have brought this suit instead of the board. Thus, comparing our case to *Kennelly* is like comparing apples to oranges.

For these reasons, we find there is no conflict between section 9.1(b) of the Act (765 ILCS 605/18.4 (West 2006)) and the two-thirds requirement. There is also no conflict with the two-thirds requirement and article 20 of the Operating Declaration. With respect to article 20, the trial court held, first, that the board had waived this argument by failing to raise it prior to the board's motion for reconsideration; and second, that even if the trial court did consider this argument, article 20 posed no conflict. We agree.

First, the board waived this argument by waiting to raise it in a motion for reconsideration. The purpose of a motion to reconsider is to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law. *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006); *Chelkova v. Southland Corp.*, 331 Ill. App. 3d 716, 729 (2002). A reconsideration motion is not the place "to raise a new legal theory or factual argument." *North River*, 369 Ill. App. 3d at 572. " ' "Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." ' [Citation.]" *North River*, 369 Ill. App. 3d at 572, quoting *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001). As a result, legal theories and factual arguments not previously made are waived. *North River*, 369 Ill. App. 3d at 572-73.

Plaintiff claims that its article 20 argument was not waived because its complaint had some cites to the Operating Declaration, in which article 20 was located. While the complaint specified the different articles of the Operating Declaration at issue, the complaint did not once cite to article 20. According to the complaint, the Operating Declaration was too voluminous to attach. Citing the declaration and expecting the trial court to find article 20 was like saying, there is the haystack, go find the needle. The complaint's specification of other articles is no substitute for raising a very specific argument with respect to article 20, in response to a dismissal motion. Thus, plaintiff waived its argument with respect to article 20.

Second, even if the board had not waived this argument, the outcome would not change. Article 20 does not conflict with the two-thirds rule. Article 20 provides that any action to enforce easements "on behalf of all the Unit Owners" is to be brought "solely" by the Association, through its officers. The point of article 20 is to prevent unit owners from suing in their individual capacities. As noted before, that is not at issue here. There is no issue in the case at bar about, as between the board or the unit owners, who may bring suit; but rather the issue is whether the board must obtain two-thirds consent before

suing. Since article 20 does not conflict with the two-thirds rule, our holding would not change, even if we considered it.

Last and least, the board argues that defendants lacked standing to raise the board's lack of standing. The board cites a 1928 case for the proposition that, "generally speaking," when the bylaws of a corporation require the shareholders' consent, only the shareholders themselves can "urge[ ]" the issue of lack of consent. *Adelman v. Carson, Pirie, Scott & Co.*, 247 Ill. App. 574, 583 (1928). However, our holding in the more recent *Kennelly* case indicates that defendants can raise this issue. In *Kennelly*, the board brought suit, and a few unit owners sought to file an intervening complaint. *Kennelly*, 359 Ill. App. 3d at 992-93. Although the board did not challenge the owners' right to sue, defendants did. *Kennelly*, 359 Ill. App. 3d at 993. This court permitted defendants to assert the issue of exclusive authority, even though that authority belonged to the board. *Kennelly*, 359 Ill. App. 3d at 993-94. This court recognized that defendants had an interest in preventing multiple suits against them. *Kennelly*, 359 Ill. App. 3d at 995-96. Similarly, in the case at bar, defendants have an interest in ascertaining the proper party, in order to avoid multiple suits against them.

In sum, we find that the board lacked standing to bring this suit, because of its failure to comply with the two-thirds rule in the bylaws; that the two-thirds rule did not conflict with either section 9.1(b) of the Act or article 20 of the Operating Declaration; that plaintiff's argument with respect to article 20 was waived, in any event; and that defendants had standing to raise plaintiff's lack of standing.

On appeal, defendants tried to draw a distinction between "standing" to bring a suit and "authority" to sue, arguing that the board possessed the former but not the latter. At oral argument, defense counsel stated that he knew of no Illinois case supporting this distinction; and plaintiff's counsel stated that he did not think there was such a distinction. Defense counsel stated that this distinction was made in the North Carolina case of *Peninsula Property Owners Ass'n v. Crescent Resources, L.L.C.*, 171 N.C. App. 89, 614 S.E.2d 351 (2005). In *Peninsula*, the North Carolina appellate court held that a board lacked "standing" to sue because it had failed to obtain the two-thirds consent of the property owners, as required by the association's bylaws. However, the North Carolina court did not draw the distinction that defendants ask us to make. *Peninsula*, 171 N.C. App. at 97, 614 S.E.2d at 356. We do not see a distinction and thus affirm the trial court's finding of a lack of standing. However, even if there was a distinction, our result would be the same whether we ruled that the board lacked the authority to sue or whether we ruled that the board

lacked standing. Defendants, who are the ones asking us to make this distinction, are not looking for a different result on appeal. So this is a distinction without a difference.

Having determined that the board lacked standing or authority to bring this suit, we then do not have jurisdiction to hear it. If we ruled on the other motions, we would, in effect, be giving preclusive effect to claims that the board did not have standing or authority to bring, and to litigation that the proper party, namely the Association, was not a party to. See *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003) ("[t]he courts of Illinois do not issue advisory opinions"). Our ruling today and the trial court's rulings below have no *res judicata* effect, except for our ruling that the board did not have standing or authority to sue. *Eighteen Investments, Inc. v. NationsCredit Financial Services Corp.*, 376 Ill. App. 3d 527, 533-35 (2007) (discussing the doctrine of *res judicata*).

We do not reach the issues presented in the cross-appeal because we are affirming dismissal of the entire suit. In the cross-appeal, the developer defendants appealed the trial court's denial of their motion to dismiss count IX of plaintiff's second amended complaint. This issue is now moot, since we have affirmed the dismissal of count IX as part of affirming the dismissal of the entire action.

## CONCLUSION

For the reasons stated above, the trial court's order dismissing this suit pursuant to section 2—619 is affirmed. As the trial court found, the board of the condominium Association lacked standing to bring this suit on behalf of the Association. However, the dismissal is without prejudice to the Association's ability to file suit, after a two-thirds vote by its members, if they choose to do so. Thus, the dismissal order is hereby modified to reflect that the judgment is without prejudice.

Affirmed, as modified.

WOLFSON and HALL, JJ., concur.