NOTICE
This Order was filed under Supreme
Court Rule 23 and is not precedent
except in the limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200031-U

NO. 4-20-0031

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 26, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| TAMMY L. LISK, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Schuyler County |
| and | ) | No. 14D14 |
| DALE W. LISK, | ) | |
| Respondent-Appellant | ) | Honorable |
| | ) | Jerry J. Hooker, |
| (Ronald Perrine, Intervenor-Appellee). | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justice Holder White concurred in the judgment.
Justice Turner dissented.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's judgment because that court did not
err in its distribution of the marital assets or granting a judgment in favor of
Ronald Perrine.

¶ 2         In October 2014, petitioner Tammy L. Lisk filed a petition for dissolution of

marriage against respondent Dale W. Lisk. In December 2015, the trial court found that grounds

existed for dissolution of marriage.

¶ 3         In April 2019, Ronald Perrine sought to intervene in the dissolution proceedings by

filing a "Complaint for Interpleader and Declaratory Relief," citing section 2-409 of the Code of

Civil Procedure (735 ILCS 5/2-409 (West 2018)). Perrine alleged that he incurred costs associated

with caring for cattle that Dale had abandoned on Perrine's property. Perrine sought a judgment

against Dale in the amount of $34,406, to be paid from a portion of the proceeds awarded to Dale

from the dissolution proceedings.

¶ 4        In October 2019, the trial court conducted a hearing at which Dale failed to personally appear. The court relied on evidence from previous hearings and found that the marital property was worth $614,285.67. The court also concluded that Dale had dissipated the value of the marital property by letting the marital residence fall into disrepair and not making the mortgage payments. The court divided the marital property in half, awarding Dale the value of the marital residence, the appraised equipment and livestock that had not been sold, the value of the cattle Dale sold, and the attorney fees awarded as the result of multiple contempt findings. Tammy was awarded the money from a property auction, her investment accounts, and money being held by the Carthage Livestock company. The court awarded her a judgment of $107,718.67 as an equalizing payment.

¶ 5        The trial court also determined that Perrine, "an intervening party," was owed $20,408 from the marital estate and directed that any remaining equipment located at Perrine's property be sold and the proceeds divided equally between Perrine and Tammy until the debt to Perrine was satisfied. Thereafter, the proceeds from the equipment sale would be awarded to Tammy until the equalizing payment judgment was satisfied.

¶ 6        Dale appeals, arguing the trial court erred by (1) incorrectly calculating the marital property value because the trial court's calculation did not include debts and other obligations, (2) failing to set a date for the purposes of determining the value of marital assets, (3) incorrectly applying the law regarding dissipation, (4) failing to equitably distribute marital assets, (5) incorrectly relying upon the requests to admit, and (6) incorrectly granting a judgment in favor of Perrine. We disagree and affirm.

¶ 7                                I. BACKGROUND

- 2 -

¶ 8         In October 2014, Tammy filed a petition for dissolution of marriage against Dale. In January 2015, the trial court ordered, in part, that Dale comply with discovery procedures and provide discovery responses. In February 2015, the court found Dale in indirect civil contempt for failing to comply with the court's January order and sentenced Dale to an indeterminate period of incarceration in jail until he complied. However, Dale purged his contempt prior to the start of that sentence.

¶ 9         In December 2015, the trial court found that grounds existed for dissolution of marriage. In July 2016, Tammy filed a motion for temporary relief, asking the trial court to order Dale to continue to pay the mortgage of the marital residence that he had stopped paying. In August 2016, the court granted that motion.

¶ 10        At a hearing on November 3, 2016, the trial court began by noting that Dale's attorney was moving to withdraw from the case. The court said, "I would state for the record that when this case began, [Dale] had Mr. Lane. Mr. Lane had to withdraw because of noncompliance from [Dale]. He then had Mr. Tucker. Mr. Tucker had to withdraw, then he had Mr. Leonard. Mr. Leonard had to withdraw." The court concluded that Dale was attempting to delay the proceedings and denied the motion to withdraw.

¶ 11        The trial court then addressed Tammy's fourth motion to compel discovery. The court questioned Dale's counsel, who confirmed counsel had (1) received interrogatories and (2) sent those interrogatories to Dale. Dale had not responded to the interrogatories. The court asked Dale why he had not responded, and Dale began to describe health problems. The court asked him why his health problems prevented him from answering questions and noted he was able to be present in the courtroom. Dale then said the interrogatories "can't be completely answered," describing various problems he had with equipment sales, taxes he needed to pay, and

the mortgage.

¶ 12        The trial court held Dale in indirect civil contempt and ordered him to "comply in total" with the discovery. The court then set sentencing for November 14, 2016, and stated, "I am going to give [Dale] an opportunity to purge before[ ] he's actually sitting in jail[.]"

¶ 13        On November 14, 2016, the trial court conducted Dale's sentencing hearing. Dale provided handwritten responses to many of the interrogatories, but upon review, Tammy's counsel noted that his responses were inadequate. The court noted that it "couldn't have been any more clear" about what Dale had to do, and Dale had still not complied with the court's order. The court said, "Everything was supposed to be redone and you didn't do it." Dale replied, "Okay. My doctor has indicated that I should be given more time because of my health problems. I was resubmitted to the hospital—" The court interrupted Dale and sentenced him to jail for an indeterminate period until he complied with discovery. One week later, by agreement, Dale's contempt was purged, and he was released from jail. (We note that in December 2016, Dale's parents sued Dale and Tammy but the trial court in that case stayed the proceedings pending resolution of this case. This court affirmed that court's decision in *Lisk v. Lisk*, 2020 IL App (4th) 190364, 143 N.E.3d 1240.)

¶ 14        In February 2017, Tammy filed a petition for indirect civil contempt in which she alleged that Dale was not making payments on the marital residence. In March 2017, the trial court ordered Tammy to make reasonable efforts to make the marital residence ready for sale. In May 2017, the court ordered Dale to (1) vacate the marital residence, (2) provide records of all cattle sales, and (3) disclose the location of any unsold cattle and farm machinery.

¶ 15        In September 2017, Tammy moved for the trial court to find Dale in indirect civil contempt. At a hearing on that motion in October 2017, the court took evidence that the marital residence was in great disrepair and filth due to Dale's neglect and that he had failed to leave the

residence. Tammy testified that when she went to the house in April 2017 to retrieve personal items, she saw that there was trash everywhere and visible rat feces. When she opened a drawer, a mouse came out. The refrigerator and toilet were full of mold. She saw moldy food on a desk in the bedroom. Tammy described the odor as "overwhelming. It was hard to breathe." The court also noted that because Dale failed to pay the mortgage as ordered, a foreclosure action had been filed against the parties. The court ordered Dale to "clean the mess, the food, [and] the feces."

¶ 16 In December 2017, the trial court found Dale in contempt and ordered that Dale had until January 8, 2018, to clean the marital residence or else he would go to jail that day. On January 8, 2018, the court found Dale remained in contempt and ordered Dale into the custody of the Schuyler County Sheriff but directed that Dale be allowed to leave during the day to clean the marital residence.

¶ 17 In April 2018, Tammy filed a notice of intent to claim dissipation in which she claimed that Dale had (1) sold cattle on multiple occasions, (2) failed to pay the mortgage for the marital residence which resulted in foreclosure, and (3) "disposed" of various farming equipment, vehicles, and other property.

¶ 18 In May 2018, Dale purged his contempt and was released from jail. Later that month, Tammy served upon Dale a request to admit facts. That same month, the trial court found that Dale had failed to respond to the request to admit facts in a timely manner and the items in the request to admit were deemed admitted. As a result, Dale was deemed to have admitted, among other things, that the residence was valued at $100,000 and the following documents attached to the requests were accurate: (1) an appraisal of personal property, (2) exhibits of the sales of cattle at various locations, and (3) a list of property that had been sold after the filing of the petition for dissolution of marriage. The court later granted the parties a dissolution of marriage and ordered

the sale of the items contained in the property appraisal.

¶ 19         In August 2018, Tammy filed a third notice of intent to claim dissipation in which she alleged that Dale had disposed of marital farm personal property that had been appraised by auctioneers. The notice identified multiple items of personal property and their respective appraised value.

¶ 20         In January 2019, the trial court ordered that by January 28, 2019, Dale must provide Tammy's counsel with a list of equipment and livestock that he claimed he had transferred to his parents. Dale failed to follow this order, and Tammy filed a petition to enforce the court's January 2019 order.

¶ 21         In February 2019, Dale failed to appear, and the trial court found him in contempt of court for violating the court's January 2019 order. The court ultimately issued a body attachment for his arrest.

¶ 22         In April 2019, Perrine sought to intervene in the dissolution proceedings by filing a "Complaint for Interpleader and Declaratory Relief," citing section 2-409 of the Code of Civil Procedure (735 ILCS 5/2-409 (West 2018)). Perrine alleged that he incurred costs associated with caring for cattle that Dale had abandoned on Perrine's property. Perrine sought a judgment against Dale in the amount of $34,406, to be paid from a portion of the proceeds awarded to Dale from the dissolution proceedings.

¶ 23         In October 2019, the trial court held a hearing at which Dale's counsel was present, but Dale failed to personally appear. The court relied on evidence from previous hearings and found that the marital property, including the appraised equipment and livestock, investment accounts, sold livestock, and awards of attorney fees to Tammy's attorney for contempt findings, was worth $614,285.67. The court noted it had received evidence that Dale had moved cattle to

North Carolina, where he now resided. The court also concluded that Dale had dissipated the value of the marital estate by letting the marital residence fall into disrepair and not making the mortgage payments.

¶ 24    The trial court divided the marital property in half, awarding Dale the value of the marital residence, the appraised equipment and livestock that had not been sold, the value of the cattle Dale sold, and the value of the attorney fees awarded to Tammy's attorney as the result of multiple contempt findings. The court awarded Tammy proceeds from an auction, her investment accounts, and funds held by the Carthage Livestock company. The court awarded her a judgment of $107,718.67 as an equalizing payment. The court also determined Perrine was owed $20,408 from the estate. The court found the agreement was made between Perrine and Dale without Tammy's knowledge. The court ordered that any remaining equipment located at Perrine's property would be sold and the proceeds would be divided equally between Perrine and Tammy until the debt to Perrine was satisfied. Thereafter, the proceeds from the equipment sale would be awarded to Tammy until the equalizing payment judgment was satisfied.

¶ 25    In November 2019, Dale filed a motion to reconsider the trial court's October 2019 order, which the court denied.

¶ 26    This appeal followed.

¶ 27                              II. ANALYSIS

¶ 28    Dale appeals, arguing the trial court erred by (1) incorrectly calculating the marital property value because the trial court's calculation did not include debts and other obligations, (2) failing to set a date for the purposes of determining the value of marital assets, (3) incorrectly applying the law regarding dissipation, (4) failing to equitably distribute marital assets, (5) incorrectly relying upon the requests to admit, and (6) incorrectly granting a judgment in favor

of Perrine. We disagree and affirm.

¶ 29                    A. The Court Properly Calculated the Marital Property Value

¶ 30          Dale first argues that the trial court incorrectly calculated the marital property value by not including all assets and debts such as mortgage and tax liens.

¶ 31          We will reverse a trial court's factual determination of the value of marital property only if the trial court's finding is against the manifest weight of the evidence. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-700, 843 N.E.2d 478, 482-83 (2006). A court's determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 59, 109 N.E.3d 942.

¶ 32          In this case, the trial court's determination of the value of the marital property was not against the manifest weight of the evidence. Although Dale now claims that the court should have included in its calculation information related to (1) the mortgage, (2) a purported debt to Dale's parents, (3) tax liens, and (4) certain checking and savings accounts, neither Dale's lawyer nor Dale presented any of that information to the court at the evidentiary hearings.

¶ 33          In Dale's brief, he notes that information regarding the mortgage is found in Tammy's request to admit facts filed in May 2018 and in a foreclosure order Dale attached to his motion to reconsider, which he filed in November 2019. Nothing in the record indicates that either party presented the information to which Dale refers on appeal to the trial court at the evidentiary hearings in May 2018 or October 2019. Dale presented this information to the court only as an attachment to his motion to reconsider the October 2019 order. However, a motion to reconsider is not an opportunity for a party to raise a new legal theory or to present new factual arguments. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280, 904 N.E.2d 1102, 1111 (2009).

¶ 34    Similarly, we note that Dale does not claim that he presented evidence of a debt owed to his parents or of any other checking or savings accounts to the trial court at the evidentiary hearings. Thus, we reiterate what this court wrote 30 years ago about claims like those Dale raises here:

> "Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.) *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248-49, 571 N.E.2d 1107, 1111 (1991).

¶ 35    Dale chose not to appear at the evidentiary hearings and now complains that the trial court failed to consider evidence never presented at those hearings. He claims this court should reverse the trial court's decision based upon evidence not before it at the time it made its determination. We decline Dale's request that we do so. The trial court's decision was not against the manifest weight of the evidence.

¶ 36                          B. Dale's Forfeited Arguments

¶ 37    For the first time on appeal, Dale claims the court erred by (1) not setting a date for valuation of the marital assets, (2) incorrectly applying the law regarding dissipation, and (3) equally dividing the marital estate without properly considering the tax burdens placed on each party.

¶ 38    As Tammy points out, because Dale failed to raise these arguments in the trial court, they are forfeited. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 85, 968 N.E.2d 115.

We also note that Dale, in his reply brief, did not respond to any of Tammy's arguments that his claims were forfeited. We conclude that Dale has forfeited these claims.

¶ 39                    C. The Trial Court Properly Relied on the Requests to Admit

¶ 40         Dale next claims that Tammy "misused Supreme Court Rule 216 in effort to knowingly and willfully attempt to mislead the court and enter false information in an outright attempt to deny equitable distribution of marital assets."

¶ 41         However, Dale has not provided an adequate record for this court to determine what, if any, error occurred in the manner by which the trial court relied upon the requests to admit. The appellant bears the burden of presenting a sufficient record and deficiencies in that record are resolved against the appellant. *Webster v. Hartman*, 309 Ill. App. 3d 459, 460, 722 N.E.2d 266, 268 (1999). Absent a sufficient record on appeal, this court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.* Because Dale did not supply any report of proceedings from the May 2018 evidentiary hearing, we presume the trial court properly utilized the requests to admit, and we conclude that the trial court did not err.

¶ 42                    D. The Trial Court's Judgment in Favor of Perrine Was Proper

¶ 43         Last, Dale claims that because he was not properly served in relation to Perrine's complaint, any resulting judgment was improper. Perrine's "Complaint for Interpleader and Declaratory Relief" was filed in April 2019. Perrine sent notice of the complaint to Dale, and in May 2019, personal service was attempted at Dale's last known (1) address at 16568 Post Road, Rushville, Illinois and (2) place of employment.

¶ 44         The record shows that at a hearing in January 2019, Dale appeared *pro se* and one of the issues that Tammy's counsel raised was that letters he sent to Dale "keep on coming back." Counsel asked if the trial court would ask Dale to provide his current mailing address. Dale stated

that his current address was "16568 Post Road, Rushville, Illinois." (We note that this is the same Rushville address that was in Perrine's affidavit of service of process, which documented Perrine's attempt to serve Dale in May 2019.) Dale explained that the mail may not have been delivered because his mailbox had been knocked over.

¶ 45 Dale failed to appear at hearings in February 2019 and May 2019. At the May 2019 hearing, Dale's counsel did appear and was present when the trial court noted that Perrine had filed the complaint. The parties agreed to a continuance, and at the end of the hearing, the court asked if any party had any other issues to bring before the court. Dale's counsel did not indicate any surprise in relation to the complaint and instead told the court he had nothing further.

¶ 46 At the October 2019 hearing, Dale failed to appear. The trial court inquired of Dale's counsel as to his client's whereabouts. Counsel replied, "I believe he's in the state of North Carolina. My conversations with him leave me with the belief that as long as the warrant remains in effect, he does not intend to return to this jurisdiction." Before Perrine presented evidence, Dale's counsel moved to continue the hearing because Dale was not present and "he will not be able to assist me with cross examining the witness." Perrine and Tammy objected to the continuance, and the court denied the motion, stating, "[Dale] has chosen to leave the jurisdiction with a warrant pending. *** He could have been here had he so chosen."

¶ 47 The record indicates that Dale's counsel was aware of Perrine's complaint well before the October 2019 hearing. Illinois courts have long held that "appearance is as good as a personal service ***." *Palmer v. Logan*, 4 Ill. 56, 60 (1841). Further, "[i]f an individual who is summoned or subpoenaed *** appears in court and does not object to jurisdiction, that individual is deemed to have submitted to the jurisdiction of the court." *Pro Sapiens, LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019, ¶ 90, 156 N.E.3d 1046. This case serves as a good

example as to why. The notion that Dale was unaware of what was happening while his attorney appeared in court at two hearings at which Perrine's claim was discussed is ridiculous. Dale could have had his attorney object to any problems Dale claimed he had with the service of process, but he did not.

¶ 48 Finally, although not necessary to our conclusion in this case, it is not lost on this court that Dale was attempting to *evade arrest*, had fled the jurisdiction, and was then in North Carolina. Any problems that Dale had with communicating with any party or the trial court were entirely of his own making. Additionally, we thank the trial court for its effort in this case and the clear record that resulted.

¶ 49 III. CONCLUSION

¶ 50 For the reasons stated, we affirm the trial court's judgment.

¶ 51 Affirmed.

¶ 52 JUSTICE TURNER, dissenting:

¶ 53 I respectfully dissent. In my view, this court should exercise our discretion and allow respondent's motion for leave to file a second reply brief. Respondent has already electronically submitted his proposed second reply brief, and I see no valid reason not to allow him to file it—even if it is doubtful the second reply brief would alter the ultimate outcome of this matter.

¶ 54 I recognize respondent's choice to proceed *pro se* does not excuse him from complying with this court's rules and those of the supreme court. Nonetheless, I would grant any attorney appearing before this court the modest relief respondent has requested. Thus, because I do not believe we should decide this case without allowing respondent to file his second reply brief for our review, I dissent.