2023 IL App (1st) 211161-U
No. 1-21-1161

FIRST DIVISION
March 20, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| VISTA NORTH CONDOMINIUM ASSOCIATION, by its Board of Directors, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois County Department, Chancery Division |
| Plaintiff-Appellant, | ) ) | No. 19 CH 8013 |
| v. | ) ) | The Honorable |
| HISPANIC HOUSING DEVELOPMENT CORPORATION, an Illinois not-for-profit corporation; HIPOLITO ROLDÁN, an individual; and THE CITY OF CHICAGO, | ) ) ) ) ) | Anna M. Loftus, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the order of the circuit court denying the plaintiff's motion to reconsider dismissal of the plaintiff's complaint or, in the alternative, leave to file an amended complaint. We agree with the circuit court that the plaintiff is unable to state a claim under any of its proposed theories, and its proposed amendments to the pleadings would not cure the defects. Furthermore, all of the plaintiff's claims, including the proposed new counts, are untimely brought.

¶ 2    Plaintiff Vista North Condominium Association ("Vista North") filed suit against

Defendants Hispanic Housing Development Corporation ("HHDC"), Hipolito Roldán, and the

City of Chicago for their failure to provide and develop a plot of land for use as a parking lot for a condominium building. Defendants collectively moved to dismiss the five-count complaint pursuant to 735 ILCS 5/2-619.1, and the circuit court granted the motion with prejudice. Vista North then filed a motion to reconsider, or, alternatively, for leave to file an amended complaint, which Vista North attached to its motion. The circuit court denied the motion, and this appeal followed. For the following reasons, we affirm.

¶ 3                                                    BACKGROUND

¶ 4    Defendant HHDC is the developer of a twenty-two-unit residential condominium building ("Condominium") located at 7732-7742 North Paulina Street in Chicago. The work took place between 2002 and 2003. Individual defendant Hipolito Roldán is the president of HHDC. The property did not include adjoining parking space for future residents, but HHCD was contemplating various non-adjacent parcels of land to develop into a parking lot for the Condominium. One such parcel ("the Parcel") ended up the subject of this lawsuit. Throughout the relevant span of time, that land was owned by Defendant City of Chicago. Plaintiff Vista North is the governing body of the Condominium, as established by the Declaration of Condominium ("Declaration") recorded on October 24, 2002.

¶ 5                                       The Condominium Documents

¶ 6    HHCD prepared a Property Report, signed by Roldán on January 1, 2002, that would be tendered to prospective purchasers. The Property Report is split into two parts—a narrative portion and exhibits. The narrative portion is described in the Property Report as a summary of the significant features of the Condominium and additional information of interest for prospective buyers. The exhibits include legal documents, forms of sales documents for individual units, and

an estimated budget and engineer's report. The Property Report's narrative portion reads, in

pertinent part:

> In the event of any inconsistency between the narrative and exhibits, the exhibits will govern. All of the Developer's sales and other representatives are prohibited from orally changing any of the terms and conditions of the Condominium Instruments or, with the exception of the Developer's attorneys, attempting to interpret their legal effect. *** Prospective purchasers are urged to read all documents and this Property Report carefully and to rely only on their own attorneys and advisors. The Property Report is not a legal offer to sell real estate; a contract only results if the prospective purchaser submits a written offer to purchase a Unit which is accepted by the seller in writing.
> ***
> [The Developer] *** intends to redevelop the buildings into twenty-two Residential Units, and one outdoor parking lot containing at least twenty-two (22) Parking Units *** The parking lot will not be located adjacent to the building. The Developer has several sites under consideration and will be adding the parking lot to the Condominium after conversion of the building to condominiums and submission of the building to the Condominium Act. All parking spaces within the Condominium will be Limited Common Elements specifically assigned for use of a specific Residential Unit and indicated as Parking Units on the Plat of Survey. All Residential Units, Parking Units, Common Elements and Easements Appurtenant to the Condominium are referred to collectively as the Condominium Property.

¶ 7    Section R of the Property Report specifically addresses parking:

> There are currently no Parking Spaces for the Property. However, the Developer is negotiating with the City of Chicago to acquire property located on West Juneway Terrace to be used as a Parking Lot for the Condominiums. In the event the Developer obtains this property from the City of Chicago, the land will be added to the Declaration and improved as a parking lot. The Parking Spaces will appurtenant to the ownership of a Residential Use for use of the designated Unit Owner as a Limited Common Element *** **PARKING SPACES ASSOCIATED WITH THIS BUILDING ARE NOT OWNED BY THE UNIT OWNERS AND MAY BE SUBJECT TO BEING DENIED TO OR TAKEN FROM UNIT OWNERS.**

> (emphasis in original).

¶ 8    The Declaration was attached as an exhibit to the Property Report. Regarding the parking

lot, the Declaration states as follows:

> (a) The Developer reserves the right to add the Additional Land . . . by recording an amended Plat . . . and an amendment to the Declaration *** within three (3) years from the date of recording of the Declaration. The Additional Land if added will be used to provide at least twenty-two (22) off street parking spaces for the Condominium. The use

of a parking space will be assigned to each unit Owner as a limited Common Element
***

(b) The Additional Land, if added to the Property, will be added at one time. The improvements to be located on the Additional Land will be striped parking, with appropriate lighting, fencing and landscaping constructed pursuant to and in compliance with the Building Code of the City of Chicago. The improvements constructed on the Add-On Property will be compatible with the configuration of the Property in relation to density, use, construction and architectural style.
***

(d) The provisions of this Section do not bind or obligate the Developer to exercise the option to add the Additional Land to the Declaration. The Additional Land is subject to acquisition from the City of Chicago. Any obligation to add the Additional Land is subject to Developer's ability to acquire the Additional Land from the City of Chicago upon terms acceptable to Developer, in its sole and absolute discretion.

¶ 9    The Property Report also included as an exhibit a copy of the form Purchase Agreement

that would be provided to purchasers. The Purchase Agreement also discussed parking:

22. Off-Street Parking. Seller reserves the right in its sole discretion, at any time before or after closing until three (3) years after the recording of the Declaration, to add additional land to the Condominium and amend the Condominium Declaration and Association By-Laws as Seller may deem necessary or appropriate to add one or more off-street parking locations to the Condominium, either as part of the Common Elements or Limited Common Elements. Purchaser acknowledges and agrees that neither Seller nor its agent or broker has many any promise or representation concerning off-street parking and that Seller shall have no obligation whatsoever to add off-street parking to the Condominium.

The Purchase Agreement also contains an integration clause, which represents that no other

warranties or representations were made leading up to the sale.

¶ 10                                            The City Ordinance

¶ 11    On May 15, 2002, the City of Chicago passed an ordinance ("the Ordinance") allowing for

the conveyance of the Parcel to HHDC. The Ordinance states, in pertinent part:

WHEREAS, To facilitate development of the Property as described in this ordinance, the City shall also convey to Developer that certain parcel *** for the nominal consideration of One and no/100 Dollars ($1.00) which shall be utilized as parking for the purchasers of condominium units at the Building; and
***
Be It Ordained by the City Council of the City of Chicago:
***

> SECTION 4. To facilitate the redevelopment of the building pursuant to the Program, the City is also authorized to convey the Parking Lot Parcel to Developer for the sum of One and no/100 Dollars ($1.00).
> SECTION 5. The Mayor or his proxy is authorized to execute, and the City Clerk to attest, a quitclaim deed conveying to Developer the Parking Lot Parcel in accordance with the terms and conditions contained in the proposed redevelopment agreement *** Said parcel shall be developed for use as parking by the purchasers of condominium units at the Building and their successors, and shall be developed pursuant to the Chicago Parking Lot Ordinance and the Program Guidelines.
> ***
>
> Exhibit B.
> Department of Zoning.
> Zoning approval is required as part of the building permit process and is covered under the building permit fee schedule described above. However, any private legal work, such as noticing nearby property owners if a zoning change is requested, is not waived.
>
> J. Proc. Chi. City Council, May 29, 2002, vol. 2, at 86260-66.

¶ 12    The last of the twenty-two Condominium Units was sold to purchasers on July 3, 2003. At that time, HHDC had not acquired the Parcel and the Condominium did not include a parking lot. In its Complaint and proposed First Amended Complaint ("FAC"), Vista North alleged that it sought the delivery of the parking lot from HHDC, and HHDC responded with assurances that it would do so. The Complaint does not detail these exchanges; however, the proposed FAC includes additional facts, stating that HHDC met with City representatives around February 2005, when HHDC represented that development of the parking lot had stalled, but was proceeding. The office of then-Alderman Joe Moore communicated this to Vista North's board president, stating that a special use permit would have to be obtained from the Zoning Board of Appeals before construction of the parking lot could begin. At that time, the Parcel had not been conveyed by the City to HHDC.

¶ 13                    Continued Efforts to Acquire and Develop the Parcel

¶ 14    Vista North next claims in the proposed FAC that a representative from the alderman's office emailed Vista North's board president on November 10, 2005, writing that the parking lot

would be built on a certain City-owned parcel of land. Vista North allegedly requested a status update on November 1, 2007, and received a message that, in lieu of obtaining a special use permit, HHDC intended to obtain a zoning variance from the City. The next activity allegedly occurred in August 2008, when the Zoning Board of Appeals approved a variance to allow construction of the parking lot.

¶ 15    On April 26, 2010, Roldán sent a letter (the "Roldán Letter") to the board treasurer of Vista North discussing the proposed parking lot, detailing how during pre-development, "it was hoped" that City property could be secured for the construction of a parking lot and the developer was negotiating with the City to acquire the Parcel. He wrote that while the City had eventually secured the land, it had not been conveyed to HHDC at the time of writing. Roldán concluded that obtaining the necessary capital, as well as a permit and transfer of the Parcel from the City, would allow for construction of the parking lot to occur in the spring of 2011. In addition to this letter, which is attached as an exhibit to the Complaint and FAC, Vista North claims that members of HHDC communicated with Vista North board members at other points around this time, in March and October of 2010 and January of 2011. In response to Vista North's requests for updates on the progress of the parking lot, HHDC allegedly maintained that while various delays had prevented construction from continuing as per the original timeline, the developer would follow up with Vista North on a new schedule.

¶ 16    On December 8, 2015, Vista North's attorneys sent a letter to Roldán and HHDC, referencing alleged promises made in the 2010 letter and threatening to sue by December 18, 2015 if Vista North did not hear from HHDC regarding a commitment to complete the parking lot by that date. Counsel for HHDC responded via emails sent on December 18 and 23, 2015 and January 3, 2016, promising to provide a substantive response to the December 8 letter. Vista North claims

that it did not receive that response, and communication between the parties regarding the continued development of the parking lot ceased. On August 17, 2016, the City allegedly indicated that it was not legally authorized to convey the Parcel to Vista North because of the erroneous PIN and street address listed in its 2002 Ordinance.

¶ 17                                    Vista North's Lawsuit and Procedural History

¶ 18    Vista North filed suit against HHDC, Roldán, and the City on July 1, 2019, pleading five separate counts: Count I sought a declaration that the Parcel was to be conveyed to Vista North and an order requiring HHDC and the City to make this conveyance; Count II sought specific performance of HHDC purchasing, developing, and conveying the Parcel; Count III, pled in the alternative to Count II, was for breach of contract based on the Purchase Agreement between Vista North as representative of the unit owners and HHDC, and also requested that HHDC purchase, develop, and convey the Parcel; Count IV pled a violation of the Municipal Code of Chicago, § 13-70-030, which prohibits the use of fraudulent representations or omissions when selling a condominium unit; and Count V was for common-law fraud against HHDC and Roldán for various misrepresentations made regarding their intent to acquire, develop, and convey the Parcel. HHDC and Roldán together and the City separately moved to dismiss all counts with prejudice. The circuit court granted the motions and dismissed all counts with prejudice on December 11, 2019 for the reasons stated on the record.

¶ 19    Vista North filed a motion to reconsider and for leave to file an amended complaint on January 10, 2020. The court denied the motion in a written opinion and order on August 27, 2021. The circuit court first summarized the basis for its prior ruling on the motions to dismiss. It previously dismissed Count I, the declaratory judgment, on the grounds that rather than seeking to declare the parties' rights, Vista North was seeking to force Defendants to convey the parking lot,

and no pleading of declaratory judgment could be properly stated to obtain such relief. Counts II and III, specific performance and breach of contract as to HHDC, were dismissed because the court found that no contract required HHDC to purchase, develop, and convey the parking lot. Counts IV for a Municipal Code violation and Count V for common-law fraud were dismissed because the court found that the record did not contain any evidence of misrepresentation made by HHDC. All counts were dismissed with prejudice, as the circuit court found that the plain language of all of the Condominium Documents[1] could never give rise to any of Vista North's causes of action, and because of the issue with the relief sought under the declaratory judgment count.

¶ 20    Separate from the court's granting the motions to dismiss pursuant to Section 2-615, the court found that the complaint was untimely. The parties dispute whether the appropriate statute of limitations is the four-year period for actions based on acts or omissions in construction (735 ILCS 5/13-214(a)) or the five-year catch-all period (735 ILCS 5/13-205). They also dispute the date from which the limitations period should run, putting forth the date that the development of the Condominium was completed (some time in 2002); the date marking three years after the Declaration was recorded, during which HHDC reserved the right to add the additional land for a parking lot (October 2005); the date of the Roldán Letter (April 26, 2010); the date of "spring 2011" Roldán mentioned in that letter; or the date of the demand letter sent by Vista North's counsel (December 8, 2015). Vista North further argued that HHDC and Roldán made repeated assurances meant to lull Vista North into believing that they intended to acquire and develop the Parcel into a parking lot, and that this behavior either constituted fraudulent concealment or extended the limitations period under the discovery rule.

---

[1] "Condominium Documents" refers to, collectively, the Property Report, the Purchase Agreement, and Declaration.

¶ 21    The circuit court first rejected the possibility of the December 8, 2015 starting date, stating that, even if Vista North sufficiently pled that HHDC and Roldán's assurances concealed the existence of its causes of action, this theory relied on the defendants' actions, while the 2015 letter was sent by Vista North. The court stated that a plaintiff cannot extend the running of the limitations period by sending a demand letter. The court further found that Vista North's claims of concealment and lulling were unsupported by the facts. The court identified the April 26, 2010 date of the Roldán Letter as the latest possible action by the defendants as alleged by Vista North, and determined that even if Vista North was able to plead that the letter created any obligations, they would fall outside of the fully integrated Condominium Documents, which state that HHDC and Roldán could not alter their obligations.

¶ 22    The court nevertheless went further, and noted that even if it were to take Roldán's statement that construction of the parking lot could be completed by spring 2011 if the necessary capital and permits were secured as the creation of a binding promise, Vista North could not claim that it was not aware of the fact that no parking lot had been developed by the end of spring 2011. The existence, or lack thereof, of a parking lot on the Parcel was openly visible and could not be concealed. Therefore, taking the end of spring 2011 as the latest possible date that Vista North pled as a possible starting point for the running of the limitations period, the complaint was still untimely. Since the court rejected all claims of concealment or activity tolling the limitations period pursuant to the discovery rule, the final remaining question was whether the four-year or five-year statute governed Vista North's claims. However, the court did not need to decide that issue, as the complaint—filed on July 1, 2019—was filed well past either deadline.

¶ 23    Turning to the question of amendment, the circuit court determined that the Property Report, Declaration, and Purchase Agreement were clear on their faces and created no obligation

on HHDC and Roldán to develop a parking lot. In its prior ruling granting the motions to dismiss, the court allowed Vista North to seek leave to amend the complaint to propose any other theory under which it could plead a cause of action. On Vista North's motion to reconsider or leave to amend, the court reviewed the new theories advanced in the FAC. In the fact section, the FAC places greater emphasis on the language of the Ordinance, as cited above, and adds additional communications between the parties between the years of 2005 and 2016, also detailed above. The new complaint now alleges that the last act by HHDC was the January 3, 2016 email from HHDC's counsel allegedly promising to follow up with a substantive response to Vista North's demand letter. It alleges that the last act by the City occurred on August 17, 2016, when it indicated that it was not authorized to convey the Parcel to Vista North because of the erroneous PIN and street address listed in the 2002 Ordinance.

¶ 24    As for the amended counts, Count I still seeks a declaratory judgment stating that HHDC was obligated to obtain and convey the Parcel. Count II is still for specific performance of the Property Report, Declaration, Purchase Agreement, and Ordinance. Count III, no longer pled in the alternative to Count II, is still for breach of contract and seeks money damages in the amount by which the Condominium's value is diminished because of the lack of parking. Count IV is a new count for breach of the implied covenant of good faith and fair dealing against HHDC for its failure to acquire, develop, and convey the Parcel as a parking lot. Count V is the same as the previous Count IV, alleging that the City violated the Ordinance. Count VI is the previous Count V, for common law fraud against HHDC and Roldán. Count VII is a new count against the City for violation of the Ordinance, and asks that the City convey the Parcel directly to Vista North, arguing that the Ordinance contains an implied private right of action for Vista North. Finally, Count VIII is a new count brought against the City for a writ of mandamus, also asking that the

City convey the Parcel to Vista North. Vista North theorized that because the Purchase Agreements that would go to individual buyers incorporated the Declaration, and the Declaration refers to HHDC's obligation to obtain the Parcel, and that obligation is premised on the Ordinance, the Ordinance is therefore incorporated into the Purchase Agreements. Vista North also pled that the Condominium Property Act at 765 ILCS 605/18.2 ("Condominium Act") put the Condominium association in the position of the developer after the former's creation.

¶ 25    The circuit court held that the proposed FAC failed for substantially the same reasons as the original complaint, and found that no set of facts, even with the new factual allegations, would entitle Vista North to recovery under the theories it put forward. Regarding the new alleged facts, the court noted that they were all available to Vista North at the time of its original complaint, and the FAC was an attempt at a "second bite of the pleadings apple." The court further noted that Vista North's motion to reconsider did not challenge the court's dismissal of its original complaint, only challenging its dismissal with prejudice, and Vista North's failure to defend its original pleading gave the court no reason to reconsider its dismissal. Because the FAC kept the same counts as in the original complaint, the court's decision to dismiss those counts was unchanged.

¶ 26    As for Vista North's theory regarding obligations created by the Ordinance, upon which Vista North's two new counts were based, the court determined that this interpretation was not supported by the plain language of the Ordinance. Despite Vista North's emphasis of the language stating that "the City shall also convey to Developer that certain parcel," the court noted that in context, all that the Ordinance did was authorize the sale of the Parcel, and the obligation on the City to convey it would only occur if HHDC sought a conveyance, and if certain conditions, such as zoning approval, were met. However, nothing mandated that the sale occur. Next, the court rejected Vista North's theory that it was a party in interest to the Ordinance. HHDC did eventually

attempt to acquire the Parcel from the City. The Ordinance only required that the City accept the sale and convey the land to HHDC, not Vista North. The court stated that it was known at the time of writing the Ordinance that the land was intended for a parking lot for the Condominium, and language could have been added to make the Condominium association a beneficiary of the conveyance.

¶ 27    The court also rejected Vista North's attempt to plead that it succeeded to any rights of HHDC upon its formation, which the court explained was a misinterpretation of the Condominium Act. Vista North relied on the provision stating that a condominium developer acts as the board prior to the election of a unit owner board to allege that the board succeeded to the rights of the developer upon its creation. *See* 765 ILCS 605/18.2(a). The court stated that the statute granted the developer the authority to act as the board up until the election of the first board, and this did not conversely transfer any of the developer's authority to the new board. Therefore, there was no basis in the Ordinance for Vista North to claim an obligation was created on the City to Vista North.

¶ 28    Next, the circuit court turned to Vista North's attempts to plead that the defendants' misrepresentations and concealment delayed the running of the limitations period. The court found the proposed new factual allegations detailing the long history of communications between the parties to show only that HHDC and Roldán believed that they would eventually be able to develop a parking lot, and their failure to do so did not conceal or misrepresent their efforts to fulfill any obligation that Vista North claims they had. The court reiterated that the Condominium Documents did not contain any binding obligation on the defendants to develop and convey a parking lot, and that the lack of a parking lot on the Parcel could not be concealed because it was out in the open for anyone to see.

¶ 29    Regarding the timeliness issue, Vista North proposed a new theory for which limitations period applied to its claims, arguing that it should be the ten-year period for breach of contract claims where no date of performance is specified. 735 ILCS 5/13-206. The circuit court rejected this argument, stating that while the Declaration did not create any obligations, it does provide a deadline for which HHDC reserved the right to obtain and develop land for a parking lot, which was three years from the date of recording the Declaration. The deadline would therefore have been October 24, 2005, and even a ten-year limitations period would make Vista North's complaint untimely. Furthermore, the court noted that this was a new legal argument improperly raised on a motion for reconsideration. Otherwise, the circuit court did not change its analysis of the timeliness issue, finding that while the four-year construction statute applied, there was no possible date from which that period could have started to run that would cure the untimeliness of the pleadings.

¶ 30    Vista North now appeals from the circuit court's order, arguing that the FAC cured any defects the circuit court found in its original complaint and it was not clearly apparent that no set of facts could entitle Vista North to recovery.

¶ 31                                                  ANALYSIS

¶ 32                                          Standard of Review

¶ 33    A Section 2-619.1 motion allows for a combined motion to dismiss under Sections 2-615 and 2-619, as well as motions for summary judgment under Section 2-1005. *Johnson v. Matrix Financial Services Corp.*, 354 Ill.App.3d 684, 688 (1st Dist. 2004).

¶ 34    A Section 2-615 motion to dismiss presents the question of whether the plaintiff has pled sufficient facts in the complaint to entitle him to relief if proven. *Powell v. American Service Ins. Co.*, 2014 IL App (1st) 123643, ¶ 13. In reviewing a dismissal pursuant to Section 2–615, all well-pleaded facts in the complaint are taken as true and are construed in the light most favorable to the

plaintiff. *Id*. A dismissal pursuant to Section 2-615 is only proper where it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Id.*; *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill.App.3d 1028, 1033 (1st Dist. 2001). A plaintiff cannot simply rely upon conclusions of law or fact unsupported by specific factual allegations. *Powell*, 2014 IL App (1st) 123643, ¶ 13; *Grund v. Donegan*, 298 Ill.App.3d 1034, 1039 (1st Dist. 1998). However, the complaint is to be liberally construed, viewed in the light most favorable to the plaintiffs. *Fox v. Seiden*, 382 Ill.App.3d 288, 294 (1st Dist. 2008). The standard of review for a dismissal under Section 2-615 is *de novo*. *Powell*, 2014 IL App (1st) 123643, ¶ 13.

¶ 35     An order of dismissal pursuant to a Section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2019)) is similarly reviewed *de novo. Porter v. Decatur Memorial Hosp.*, 227 Ill. 2d 343, 352 (2008). The Section 2-619 motion admits as true all well-pleaded facts, all reasonable inferences to be drawn from the facts, and the legal sufficiency of the claim. *Id*. In addition, all pleadings and supporting documents must be construed in the light most favorable to the non-moving party. *Id*. A dismissal of a pleading pursuant to Section 2-619 is based on certain defects or defenses that defeat the claim. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18. Section 2-619(a)(5) requires dismissal when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5).

¶ 36     When a court finds the allegations insufficient under either the Section 2-615 or Section 2-619 standard, it may allow the plaintiff to amend the complaint as appropriate. If the plaintiff is able to state a cause of action by amending the complaint, a court abuses its discretion if it dismisses the claims with prejudice, rather than allowing for amendment. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill.2d 263, 272-73 (1992); *Brown Leasing, Inc. v. Stone*, 284 Ill.App.3d 1035. A complaint should not be dismissed for failure to state a cause of action

"unless it clearly appears that no set of facts could be proved under the pleadings which would entitle plaintiff to relief." *Rudnick v. Vokaty*, 84 Ill.App.3d 1003, 1007-08 (1st Dist. 1980). We review a ruling on a motion for leave to amend the pleadings on an abuse of discretion standard. *Loyola Academy*, 146 Ill.2d at 273. While this is a deferential standard, where the proposed amendment would be futile, denial of leave to amend is not an abuse of discretion. *Malacina v. Cook County Sheriff's Merit Board*, 2021 IL App (1st) 191893, ¶ 40.

¶ 37     The purpose of a motion to reconsider is to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill.App.3d 268, 280 (1st Dist. 2009). It is not proper to use a motion to reconsider to raise a new legal theory or factual argument that was available prior to the hearing on the motion from which the motion to reconsider arises. *Id.* We use an abuse of discretion standard for reviewing a trial court's denial of a motion to reconsider that is based on new matters, including additional facts or new legal theories that were not presented during the prior course of proceedings. *Muhammad v. Muhammad-Rahmah*, 363 Ill.App.3d 407, 415 (1st Dist. 2006). When the denial is based only on the trial court's application of existing law, the standard is *de novo*. *Id.* Here, Vista North's motion was based on new matters, and we apply the abuse of discretion standard.

¶ 38                                    Breach of Contract[2]

¶ 39     Vista North's breach of contract claim and related claims against HHDC and Roldán hinge on the existence of an obligation owed by the developers to Vista North to develop and convey a

---

[2] We reiterate that, as the circuit court noted, Vista North failed to defend its original pleadings in its motion to reconsider, relying on the addition of newly-alleged facts regarding the language of the Ordinance and additional communications between the parties, all of which was available to Vista North prior to its motion and can properly be disregarded on a motion to reconsider. Therefore, we could end our analysis there, to the extent that the proposed FAC substantially restates the original claims, and determine that Vista North has waived its right to attempt to defend those pleadings on appeal. However, we may affirm the circuit court's ruling on any valid basis, and we will continue in reviewing the pleadings.

parking lot. The relevant documents forming a valid and enforceable contract, according to Vista North, are the Declaration and Property Report. Specifically, Vista North points to Paragraph 4 of the Property Report, which is a portion of the narrative section laying out the developer's "inten[t] to redevelop *** one outdoor parking lot containing at least twenty-two (22) Parking Units" and further stating that the developer "has several sites under consideration and will be adding the parking lot to the Condominium after conversion of the building to condominium and submission of the building to the Condominium Act." Vista North also cites to Paragraphs B(4), B(5), and B(9) of the Statutory Disclosures portion of the Property Report, an argument it makes for the first time on appeal and does not include in either the underlying motion or proposed FAC. Those sections, respectively, state that the Condominium property improvements consist of the Condominium building and "a parking lot;" that the parking lot is "located to the West of the Parcel;" and that a "purchaser may purchase more than one Residential Unit and Parking Unit (or any combination thereof) if the Developer in its sole discretion chooses to sell more than one Unit to the purchaser." Defendants, as well as the circuit court in its order, add to these citations Section R of the Property Report, cited in relevant part above, which states that the developer was negotiating with the City to obtain property for a parking lot, and "in the event" that it acquired such property, "the land will be added to the Declaration and improved as a parking lot."

¶ 40    Vista North's selective quoting from the Property Report is an attempt to create a meaning from the document that simply isn't there, when all parts of the report are read in context. *See Gallagher v. Lenart*, 226 Ill.2d 208, 233 (2007) ("[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others. The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.") (internal citations removed); *Morningside North*

*Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 15 ("We construe the contract as a whole, viewing each provision in light of the other provisions. We do not construe a contract by viewing a clause or provision in isolation") (internal citations removed). When viewing the Property Report in its entirety, it is clear from its face that, as far as the parking lot is concerned, the document begins with a statement of HHDC's intent to acquire and develop land for a parking lot. It cannot reasonably be read as an obligation to actually do so. If that land is acquired and developed, the document contains the process for it to be added to the Condominium. Furthermore, nothing in the record suggests that HHDC's statement of intent was misleading or fraudulent in any way—the facts show that HHDC did make efforts to acquire the Parcel for development as a parking lot, including selecting the Parcel from among the possible properties, obtaining a zoning variance from the City, and attempting to acquire the Parcel. The developer was ultimately unsuccessful because the City determined it lacked the authority to convey the land pursuant to the Ordinance, due to an erroneous PIN and address listed in the Ordinance.

¶ 41 The remaining citations to various other portions of the Property Report that reference a parking lot, when read as part of the whole document and in their proper context, are statements describing certain features and elements of the parking lot, or detailing the conditions that must be met for HHDC to be able to acquire, develop, and convey the land, but not statements requiring HHDC to develop a parking lot. Sections B(4), B(5), and B(9) are part of the disclosures required by the Condominium Act—Vista North overreaches attempting to find a binding promise by HHDC to acquire a parking lot here. Certainly, if the Condominium did have a parking lot, this is the information that HHDC must disclose about it, but that is all. Section R, meanwhile, plainly states that HHDC was negotiating with the City to acquire the Parcel, a statement that is neither contradicted by any facts in the record, nor a promise to acquire the Parcel. The section continues,

making it even clearer that the procurement of a parking lot is merely a conditional statement, not an obligation: "*In the event the Developer obtains this property* from the City of Chicago, the land will be added to the Declaration and improved as a parking lot" (emphasis added).

¶ 42    If there are any inconsistencies between the Property Report and the Declaration—an exhibit to the Property Report—the former states that the exhibits shall govern. Therefore, even if any of the provisions that Vista North points to in the Property Report could reasonably be construed as obligating HHDC to deliver a parking lot, the Declaration makes it clear that HHDC had discretion to do so, but did not have to. To summarize the relevant parts, it states: that HHDC "reserves the right to add" the land that, "if added will be used to provide" off-street parking for Condominium owners; that this additional land, "if added to the Property," will meet certain conditions for how the parking lot should be constructed; and that the aforementioned provisions "do not bind or obligate the Developer to exercise the option to add the Additional Land to the Declaration. *** Any obligation to add the Additional Land is subject to Developer's ability to acquire the Additional Land from the City of Chicago upon terms acceptable to Developer, in its sole and absolute discretion." The Purchase Agreement is also an exhibit to the Property Report, and it states that HHDC "reserves the right in its sole discretion" to add land for off-street parking to the Condominium up until three years after the recording of the Declaration." The Purchase Agreement further provided that "neither Seller nor its agent or broker has many any promise or representation concerning off-street parking and [] Seller shall have no obligation whatsoever to add off-street parking to the Condominium," with "Seller" referring here to the developer.

¶ 43    Read as a whole, the unambiguous language on the face of the documents gives HHDC the option, but not the obligation, to acquire land and turn it into off-street parking for the Condominium; furthermore, that discretion extends only to three years after the Condominium

Declaration's recording. That time passed on October 24, 2005. An agreement in which the promisor does not actually promise to do anything, or where the promised performance is optional, contains only illusory promises not binding upon the promisor. *DiCosola v. Ryan*, 2015 IL App (1st) 150007, ¶ 20. Such is the case here.

¶ 44    Vista North's final attempt to plead the existence of a contractual obligation is the Ordinance. As an initial note, Vista North acknowledges that in order to maintain a claim against the City for violation of the Ordinance, assuming that the Ordinance created an obligation on the City to sell the Parcel, Vista North must overcome the fact that the Ordinance speaks to the sale of the land to HHDC, not Vista North. We agree with the circuit court's analysis of Vista North's argument that, pursuant to the Condominium Act, it succeeded to the rights of the developer upon the formation of a Condominium board.

¶ 45    Vista North notes that a developer "acts as an agent or on behalf of the owners of units of an unincorporated association from the date of declaration until the election of the initial board." *Ebert v. Nassau Terrace Condominium, Inc*., 145 Ill.App.3d 465, 472 (1st Dist. 1986). However, this does not mean that the board can retroactively assume the rights held by the developer under any statute or, in this case, ordinance. As we explained above in interpreting the Condominium Act, it "provides that the developer is to act as the interim board of managers on behalf of the Association from the date of declaration until the election of the initial board. The Act further provides that the developer is to have the same duties, obligations, rights and privileges as the board of managers, and is to act as a fiduciary of the unit owners." *Glickman v. Teglia*, 388 Ill.App.3d 141, 150 (1st Dist. 2009); 765 ILCS 605/18.2(a). The developer's authority and obligation to act as the board ends upon the formation of a board—Vista North has not provided us with any authority for its position that this provision of the Act was intended to specifically

broaden the rights of the board. The section speaks to the position of the developer, in relation to the creation of a board. That is all. We cannot infer a meaning in the statute that does not exist in the text. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24 ("When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law.") Having established that Vista North cannot claim any rights or authority of the developer, we need not further discuss the elements of an implied right of action.

¶ 46    Even if Vista North could establish that the Ordinance provided it with an implied private right of action, it misstates the purpose of the Ordinance. Rather than obligating the City to sell the Parcel to HHDC, it merely authorized the City to do so. The Ordinance clearly states that "the City is *** authorized to convey the *** Parcel." This cannot be read as creating a requirement. Vista North cites a portion that states in part, "Said parcel shall be developed for use as parking by the purchasers of condominium units." However, the plaintiff again is being selective in its quoting of the relevant text. The Ordinance does indeed describe the purpose of the Parcel, namely, to be developed into a parking lot for buyers of Condominium units. That does not require the City to provide that land, for much the same reasons that we have already discussed in our interpretation of the Condominium Documents. At best, it obligates HHDC to develop the Parcel as a parking lot, if HHDC is first able to acquire the Parcel from the City, which it was not. The same section that Vista North relies upon for the supposed obligation reads, "The Mayor or his proxy is authorized to execute *** a quitclaim deed conveying to Developer the Parking Lot Parcel," and another provision similarly states that the City is "authorized to convey" the Parcel. Vista North does not point to any mandatory language in the Ordinance that would provide either Vista North or HHDC a right to sue for breach of the terms of the Ordinance if no sale occurred. It also fails to

support its contention that the language is at least ambiguous as to whether it creates an obligation, and should not be resolved in the defendants' favor on a motion to dismiss. This might be true, had Vista North directed us to any language that, when read in the context of the whole Ordinance, requiring the City to make the sale.

¶ 47    Additionally, we note that the City was within its rights to reject a sale that did not meet certain conditions, which is what ended up happening in this case—in 2016, City representatives stated that the City was not authorized to sell the land due to an error in the PIN and address listed for the Parcel in the Ordinance. Vista North points to nothing in the Ordinance that required the City to sell the Parcel regardless of whether the appropriate procedure was followed or the City's usual requirements for conducting a property sale were met.

¶ 48    In summary, the Ordinance authorized the City to sell the Parcel but did not override any conditions that the City had in place in order to convey its property. That sale would have been to the developers, not Vista North. Had the sale occurred, HHDC was to turn the land into a parking lot for the Condominium and for no other purpose. Events never reached that point, as the sale did not occur. Finally, the Condominium Act did not retroactively grant the newly-formed Condominium board the right to step in for HHDC in any contractual relationships. Vista North is not able to plead a claim against the City for breach of the Ordinance, or to refer to any Ordinance-based obligations on HHDC to connect to its alleged breach of contract based on the Condominium Documents. The proposed FAC does not cure the original breach of contract claims, and the facts in the record do not support the proposed added count against the City for breach of contract.

¶ 49             Breach of Implied Covenant of Good Faith and Fair Dealing

¶ 50    Vista North added a new count in the proposed FAC against HHDS for a breach of the implied covenant of good faith and fair dealing, claiming that even if the Condominium

Documents granted HHDC discretion with respect to developing and conveying a parking lot, the exercise of that discretion was governed by the implied covenant. HHDC allegedly breached that covenant by failing to provide the parking lot. When a party is given broad discretion in performing the terms of a contract, the implied covenant of good faith and fair dealing requires that this discretion be exercised "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill.App.3d 160, 165 (1st Dist. 2004) (quoting *Resolution Trust Corp. v. Holtzman*, 248 Ill.App.3d 105, 112 (1st Dist. 1993)). Vista North claims that HHDC breached that covenant by continuing to make assurances that it was working on acquiring the Parcel and intended to turn it into a parking lot, and ultimately failing to follow through on that promise. Vista North again relies on the Condominium Documents and the Ordinance, in the latter case referencing the provisions stating that the Parcel shall be used as a parking lot for the Condominium; we have discussed Vista North's arguments for the existence of an obligation on the developers in the previous section.

¶ 51    The covenant of good faith and fair dealing cannot be used to create obligations where none exist by the terms of the contract as written. *See Suburban Insurance Services, Inc. v. Virginia Surety Co., Inc.*, 322 Ill.App.3d 688, 693 (1st Dist. 2001) ("The covenant of good faith and fair dealing does not allow a party to read an obligation into a contract that does not exist"); *see also Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill.App.3d 355, 367 (1st Dist. 1995) (stating the same). Nor can the covenant override the express terms of the contract. *See Resolution Trust Corp*, 248 Ill.App.3d at 113 (express covenants abrogate the operation of implied covenants, including the covenant of good faith and fair dealing). Vista North is correct that where a party has discretion in how to perform an obligation created by the contract, it must exercise that discretion

in a manner consistent with the reasonable expectations of the parties, pursuant to the implied covenant. *See Northern Trust Co.*, 276 Ill.App.3d at 367. However, that is only where the contract's terms create an obligation. The discretion afforded to HHDC by the Condominium Documents did not require it to ever provide a parking lot. To allow Vista North to maintain its cause of action under this theory would be to use the implied covenant to modify the terms of the contract. As for HHDC's obligations to provide a parking lot under the Ordinance, we restate our previous discussion—any conditions placed on the Parcel once HHDC acquired it, first required the City to sell the property to the developer. Nothing in the Ordinance placed a duty on HHDC to purchase the Parcel.

¶ 52     Furthermore, none of the facts Vista North pled detailing HHDC's communications of promises and assurances display unreasonable, arbitrary, or capricious conduct. HHDC was negotiating with the City for some time about acquiring the Parcel, and so there is no basis to believe that any expression on behalf of HHDC to convey a parking lot was not made in good faith. Vista North's main evidence is Roldán's letter stating that construction could occur in spring 2011 was clearly conditioned on obtaining funds and a zoning permit. It would not be reasonable for Vista North to believe that this was a guarantee from the developer to deliver the lot. The Condominium Documents also make it clear that there were certain conditions outside of HHDC's hands when it came to acquiring City property. Therefore, the circuit court properly rejected Vista North's attempt to add this cause of action.

¶ 53                                    Declaratory Judgment

¶ 54     In its proposed FAC, Vista North maintained its original count for declaratory judgment, requesting a declaration from the court that HHDC is obligated to acquire the Parcel from the City and convey it to Vista North. This argument is based on the same facts and theories discussed

above, regarding alleged obligations on HHDC and the City under the Condominium Documents and the Ordinance. As those counts were properly dismissed, the underlying claim for declaratory judgment fails for the same reasons. *See Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill. App. 3d 434, 447 (1st Dist. 2011) (dismissing declaratory judgment claim found to be reiteration of other dismissed claims).

¶ 55                    Specific Performance and Writ of Mandamus

¶ 56    Vista North's count seeking specific performance of the Condominium Documents and the Ordinance by HHDC was properly dismissed for the same reasons as its breach of contract counts. *See Hoxha v. LaSalle National Bank*, 365 Ill.App.3d 80, 85 (1st Dist. 2006) (To be entitled to specific performance, plaintiff must prove, among other factors, the existence of a valid, binding, and enforceable contract.)

¶ 57    Similarly, Vista North's newly-proposed count seeking a writ of mandamus against the City, asking the court to compel conveyance of the Parcel, would fail because the Ordinance did not give Vista North a clear, affirmative right to relief upon which the writ can be based. *See Ryan v. City of Chicago*, 2019 IL App (1st) 181777, ¶ 13.

¶ 58                    Common-Law Fraud and Municipal Code Violation

¶ 59    Both versions of Vista North's pleadings contained a count of common-law fraud against HHDC and Roldán. The elements of common-law fraud are: "(1) a false statement of material fact by the defendant, (2) who knew that the statement was false (3) and intended to induce the plaintiff to act in reliance upon the statement, (4) the plaintiff reasonably relied upon the truth of the statement, and (5) the plaintiff suffered damage as a result of action in reliance upon the statement." *Castlerigg Master Investments, Ltd. v. AbbVie, Inc.*, 2021 IL App (1st) 200527, ¶ 20. Fraud-based claims must meet a high standard of specificity, and require "specific allegations of facts from

which fraud is the necessary or probable inference." *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill.App.3d 795, 803-04 (1st Dist. 2005). A promise to perform some future act, made with the intent to not perform that act, is not actionable fraud unless that false promise "is part of a scheme or device to defraud another of her property." *Id.* at 804; *see also Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 41 ("[A]ssurances as to future events are generally not considered misrepresentations of fact.")

¶ 60    Vista North's other count of fraud alleges that HHDC and Roldán violated the Chicago Municipal Code, § 13-72-030, which states, "No person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell, or offer for sale any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation."

¶ 61    In both versions of its complaint and pertaining to both the counts of fraud, Vista North pleads that HHDC and Roldán made the following specific misrepresentations: (a) that the Condominium would include an outdoor parking lot of at least twenty-two spots; (b) that HHDC would add the parking lot to the Condominium after conversion of the building and submission of the building to the Condominium Act; (c) that all parking spaces would be limited common elements assigned for use by specific residential units and indicated as parking units on the Plat of Survey; and (d) that the parking lot would consist of a striped parking lot with appropriate lighting, fencing, and landscaping in compliance with the Building Code of the City of Chicago. All of these alleged promises come from the Condominium Documents, and, as we have previously stated, only prescribed conditions on the conveyance and development of the parking lot—the crucial missing element, whose absence is fatal to Vista North's pleadings, is the lack of any obligation to construct the parking lot in the first place.

¶ 62   The documents make it clear that HHDC intended to—but did not contractually promise to—produce a parking lot for the Condominium, and that it had the discretion to do so. If it had acquired the Parcel and developed it into a parking lot, it indeed would have had to add at least twenty-two units, proper fencing and lighting, and all other requirements Vista North identifies. While HHDC's ultimate intentions as to the parking lot make no difference to the survival of Vista North's fraud count, we reiterate that it did attempt to provide a parking lot, and therefore, it did not misrepresent its willingness to procure the Parcel in the future. Finally, Vista North cannot show that it "could not have discovered the truth through a reasonable inquiry or inspection" in relying on the alleged misrepresentations. *Pack v. Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 95. As the developers and the circuit court note, the condition of the Parcel was openly visible to Vista North; it would not have been reasonable for it to believe that HHDC had developed a parking lot on the Parcel, whether by October 2005, spring 2011, or any other date. Therefore, the circuit court properly dismissed the fraud count and denied Vista North's attempt to amend.

¶ 63                           Statute of Limitations

¶ 64   Having disposed of all of Vista North's original and proposed causes of action, the circuit court then found that Vista North's complaint was untimely, under any of the plausible limitations periods and starting dates put forth by the parties. The factual allegations, both those in the original complaint and added in the proposed FAC, are detailed above. The parties disagree as to which limitations period applies to the actions involved in HHDC's alleged obligation to acquire the Parcel from the City, develop it into a parking lot, and convey it to Vista North. fall under the definition of an act or omission in the design, planning, or management of construction. The options originally put forward were the four-year construction statute for "act[s] or omission[s] *** in the design, planning, supervision, observation or management of construction, or

construction of an improvement to real property" (735 ILCS 5/13-214(a)) or the five-year catch-all period (735 ILCS 5/13-205). In its motion to reconsider or amend, Vista North presents a new theory—the ten-year period for a breach of contract claim where the contract does not specify the time for performance. *See* 735 ILCS 5/13-206, *Wilmette Partners v. Hamel*, 230 Ill. App. 3d 248, 257 (1st Dist. 1992) ("Where a contract does not specify the time for performance, the law implies a reasonable time.") The parties also dispute the date from which the limitations period began to run, with Vista North claiming that HHDC and Roldán delayed that starting date by lulling Vista North into the belief that they were still working on delivering a parking lot.

¶ 65   We agree with the circuit court that it is unnecessary to determine either the exact starting date or which statute applies in this matter. We reject the proposed ten-year period for breach of contract because, even if the contract in this case created an obligation on the defendants, it did contain a deadline for performance. The Declaration states that HHDC "reserves the right to add the [Parcel] within three (3) years from the date of recording of the Declaration." The Declaration was recorded on October 24, 2002, meaning that HHDC reserved this right until October 24, 2005. As previously stated, the Condominium Documents are fully integrated and we need not look beyond them to determine that this was the date, if any, by which HHDC was required to provide a parking lot. Finally, we also agree with the circuit court that this new argument regarding the statute of limitations was improperly brought on a motion for reconsideration. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36; *Healey*, 389 Ill.App.3d at 280.

¶ 66   As we have concluded that there were no obligations created by the Condominium Documents or the Ordinance, and no fraudulent concealment, lulling, or any other actions that would justify the application of the discovery rule to the limitations period, any activity that occurred within either four or five years of the July 1, 2019 filing date does not constitute the

starting date from when Vista North's causes of action accrued. Additionally, as previously stated, all of the newly alleged facts regarding communications between the parties extending into 2016 were available to Vista North at the time of its original pleading, and raising them for the first time on a motion to reconsider is improper. Regardless, they would not cure Vista North's complaint. None of the remaining possible dates, which span from October 24, 2005 to the end of spring 2011, would make the complaint timely. While we sympathize with the condo owners, we are obligated to analyze the law as it is. Therefore, in addition to finding that Vista North cannot plead a valid cause of action under any set of facts in the record, we also affirm the circuit court's decision to dismiss the complaint and deny the motion to reconsider or for leave to amend, pursuant to 735 ILCS 5/2-619(a)(5).

¶ 67                          CONCLUSION

¶ 68    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 69    Affirmed.